BRADLEY S. PHILLIPS (SBN 85263)
brad.phillips@mto.com
HAILYN J. CHEN (SBN 237436)
hailyn.chen@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

JESLYN A. MILLER (SBN 274701)
jeslyn.miller@mto.com
THANE M. REHN (SBN 296197)
thane.rehn@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

CHARLES F. ROBINSON (SBN 113197)
charles.robinson@ucop.edu
KAREN J. PETRULAKIS (SBN 168732)
karen.petrulakis@ucop.edu
MARGARET L. WU (SBN 184167)
margaret.wu@ucop.edu
ELISABETH C. YAP (SBN 284132)
elisabeth.yap@ucop.edu
UNIVERSITY OF CALIFORNIA
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA  94607-5200
Telephone:    (510) 987-9800
Facsimile:    (510) 987-9757

Attorneys for The Regents of the University of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SOFIE KARASEK, individually; NICOLETTA COMMINS, individually; ARYLE BUTLER, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a public entity, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 4:15-cv-03717-WHO<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**<br><br>Date:     November 3, 2015<br>Time:     3:00 p.m.<br>Place:    Courtroom 2, 17th Floor<br>Judge:   Hon. William H. Orrick |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................2

I.      INTRODUCTION.............................................................................................2

II.     ALLEGATIONS OF THE SECOND AMENDED COMPLAINT ....................................3

        A.      SOFIE KARASEK. ...........................................................................4

        B.      NICOLETTA COMMINS. ....................................................................4

        C.      ARYLE BUTLER. .............................................................................5

        D.      ADDITIONAL ALLEGATIONS. ............................................................6

III.    ARGUMENT ...................................................................................................6

        A.      PLAINTIFFS' COMPLAINT MUST BE DISMISSED IF IT FAILS TO
                STATE A LEGALLY COGNIZABLE CLAIM.........................................6

        B.      PLAINTIFFS' TITLE IX CLAIM FAILS AS A MATTER OF LAW. ...................7

                1.      PLAINTIFFS' TITLE IX CLAIM FAILS BECAUSE PLAINTIFFS
                        HAVE NOT ALLEGED THAT THE REGENTS ACTED WITH
                        DELIBERATE INDIFFERENCE.....................................................8

                        A.      KARASEK HAS NOT PLEADED SUFFICIENT FACTS
                                TO SHOW DELIBERATE INDIFFERENCE.................................9

                        B.      COMMINS HAS NOT PLEADED SUFFICIENT FACTS
                                TO SHOW DELIBERATE INDIFFERENCE...............................10

                        C.      BUTLER HAS NOT PLEADED SUFFICIENT FACTS TO
                                SHOW DELIBERATE INDIFFERENCE, OR TO SHOW
                                THAT UC HAD ANY CONTROL OVER HER
                                HARASSER OR THE CONTEXT IN WHICH HER
                                HARASSMENT OCCURRED. ...............................................11

                        D.      PLAINTIFFS' ALLEGATIONS ABOUT THE "DEAR
                                COLLEAGUE LETTER" DO NOT SUPPORT THEIR
                                CLAIM OF DELIBERATE INDIFFERENCE...............................13

                2.      UC'S CONDUCT DID NOT CAUSE PLAINTIFFS TO
                        UNDERGO OR BE VULNERABLE TO HARASSMENT......................13

        C.      PLAINTIFFS' CLAIM UNDER CALIFORNIA EDUCATION CODE §
                220 FAILS FOR THE SAME REASONS AS THEIR TITLE IX CLAIM.............16

        D.      PLAINTIFFS' STATE COMMON-LAW TORT CLAIMS SHOULD BE
                DISMISSED.....................................................................................17

**TABLE OF CONTENTS**
(continued)

Page

1.    AS A PUBLIC ENTITY, UC IS NOT SUBJECT TO COMMON-LAW TORT LIABILITY...........................................................................17

2.    PLAINTIFFS' FAILURE TO WARN CLAIM SHOULD BE DISMISSED BECAUSE UC DID NOT HAVE ANY DUTY TO WARN THEM OF POTENTIAL ATTACKS BY THIRD PARTIES..........................................................................................19

3.    PLAINTIFFS' FRAUD CLAIM SHOULD BE DISMISSED BECAUSE THEY HAVE FAILED TO PLEAD ANY MISREPRESENTATIONS WITH PARTICULARITY. ...........................20

E.    THE COURT SHOULD DISMISS WITHOUT LEAVE TO AMEND.................21

IV.    CONCLUSION ................................................................................................21

NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................... 7

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011), ....................................................................................... 21

*Clifford v. Regents of Univ. of Cal.*,
    No. 11 CV 02935, 2012 WL 1565702 (E.D. Cal. Apr. 30, 2012), aff'd, 584 F. App'x
    431 (9th Cir. 2014) .......................................................................................................... 13

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) .................................................................................................. passim

*Doe v. Dallas Indep. Sch. Dist.*,
    153 F.3d 211 (5th Cir. 1998) ............................................................................................ 8

*Doe v. Sch. Bd. of Broward County, Fla.*,
    604 F.3d 1248 (11th Cir. 2010) ........................................................................................ 8

*Doe v. Univ. of the Pac.*,
    No. CIV. S-09-764, 2010 WL 5135360 (E.D. Cal. Dec. 8, 2010) ......................................... 11

*Doe v. Willits Unified Sch. Dist.*,
    No. 09 CV 03655, 2010 WL 4922645 (N.D. Cal. Nov. 29, 2010) aff'd, 473 F. App'x
    775 (9th Cir. 2012) .......................................................................................................... 16

*Elgamil v. Syracuse Univ.*,
    No. 99-CV-611 NPMGLS, 2000 WL 1264122, at *8 (N.D.N.Y. Aug. 22, 2000) ................ 14

*Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*,
    627 F. Supp. 2d 1187 (E.D. Cal. 2009) ......................................................................... 8, 16

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) .............................................................................................. 8, 10, 13

*Griggs v. Pace Am. Grp., Inc.*,
    170 F.3d 877 (9th Cir. 1999), ........................................................................................ 21

*Jappa v. State of Cal.*,
    No. 05 CV 1813, 2009 WL 69312 (S.D. Cal. Jan. 8, 2009) ................................................. 18

NOTICE OF MOTION AND MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2001) ............................................................................. 20

*Lopez v. Regents of Univ. of Cal.*,
  5 F. Supp. 3d 1106, 1126 (N.D.Cal. 2013) ........................................................ 14

*Lovesy v. Armed Forces Ben. Ass'n*,
  No. 07 CV 02745, 2009 WL 1574575 (N.D. Cal. June 3, 2009) .......................... 21

*Moore v. Murray State Univ.*,
  No. 12 CV 00178, 2013 WL 960320 (W.D. Ky. Mar. 12, 2013) .......................... 14

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ................................................................................. 7

*Oden v. N. Marianas Coll.*,
  440 F.3d 1085 (9th Cir. 2006) ................................................................ 8, 10, 11

*Ostrander v. Duggan*,
  341 F.3d 745 (8th Cir. 2003) ............................................................................... 13

*Reese v. Jefferson School Dist. No. 14J*,
  208 F.3d 736 (9th Cir. 2000) .............................................................. 7, 8, 12, 14

*Rouse v. Duke Univ.*,
  914 F. Supp. 2d 717 (M.D.N.C. 2012), aff'd, 535 F. App'x 289 (4th Cir. 2013) .................. 14

*Shrum ex rel. Kelly v. Kluck*,
  249 F.3d 773 (8th Cir. 2001), ............................................................................. 15

*Stanley v. Trs. of Cal. State Univ.*,
  433 F.3d 1129 (9th Cir. 2006) ............................................................................. 16

*Thomas v. Meharry Med. Coll.*,
  1 F. Supp. 3d 816, 826 (M.D. Tenn. 2014) ........................................................ 14

*Vess v. Ciba-Geigy-Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................. 20

*Yoona Ha v. Northwestern Univ.*,
  No. 14 CV 895, 2014 WL 5893292 (N.D. Ill. Nov. 13, 2014) ............................ 16

STATE CASES

*Crow v. State of Cal.*,
  222 Cal. App. 3d 192 (1990) ............................................................................... 18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Davis v. City of Pasadena*,
    42 Cal. App. 4th 701 (1996)...................................................................................17

*Delgado v. Trax Bar & Grill*,
    36 Cal. 4th 224 (2005).........................................................................................19

*Donovan v. Poway Unified Sch. Dist.*,
    167 Cal. App. 4th 567 (2008)..............................................................................16

*Harshbarger v. City of Colton*,
    197 Cal. App. 3d 1335 (1988)..............................................................................18

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (2010)..............................................................................19

*Miklosy v. Regents of Univ. of Cal.*,
    44 Cal. 4th 876 (2008).........................................................................................17

*Peterson v. San Francisco Cmty. Coll. Dist.*,
    36 Cal. 3d 799 (1984)..........................................................................................18

*Stockinger v. Feather River Cmty. Coll.*,
    111 Cal. App. 4th 1014 (2003)............................................................................19

*Tanja H. v. Regents of Univ. of Cal.*,
    228 Cal. App. 3d 434 (1991)...............................................................................19

**FEDERAL STATUTES**

20 U.S.C. § 1092(f)(13) ....................................................................................................21

20 U.S.C. § 1092(f)(14)(A)...............................................................................................21

20 U.S.C. § 1092(f)(14(B) .................................................................................................21

Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* ...................passim

**STATE STATUTES**

Cal. Educ. Code § 210.3....................................................................................................17

Cal. Educ. Code § 220.............................................................................................1, 3, 16, 17

Cal. Gov. Code § 811.2......................................................................................................17

Cal. Gov. Code § 815.........................................................................................................17

Cal. Gov. Code § 815.2......................................................................................................18

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Cal. Gov. Code § 818.1 ...................................................................................................... 18

Cal. Gov. Code § 835 ........................................................................................................ 17

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ................................................................................................... 1, 20, 21

Fed. R. Civ. P. 11 ............................................................................................................. 12

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 6

Fed. R. Civ. P. 15(a) ......................................................................................................... 21

**OTHER AUTHORITIES**

Office for Civil Rights, Dep't of Education, Dear Colleague Letter: Sexual Violence (Apr.
    4, 2011) (available at http://www.ed.gov/ocr/letters/colleague-201104.pdf), at 4 & n.
    12 ................................................................................................................................ 13

**PLEASE TAKE NOTICE** that on November 3, 2015, at 3:00 p.m. before the Honorable William H. Orrick in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant The Regents of the University of California ("The Regents" or "UC") will and does move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims brought against it in Plaintiffs' Second Amended Complaint ("Complaint" or "Compl."), filed September 10, 2015.  ECF No. 14.

The Complaint should be dismissed pursuant to Rule 12(b)(6) for the following reasons:

(1) Claim 1—which alleges gender discrimination in violation of Title IX—fails to state a claim because Plaintiffs have not alleged facts that would support an inference that UC acted with "deliberate indifference" to their reports of sexual harassment and assault. In addition, Plaintiffs have not alleged that UC's conduct subjected them to any harassment or made them vulnerable to any harassment.  Moreover, Plaintiff Butler's claim must also be dismissed because she fails to allege that UC exercised control of her harasser or the context in which her harassment occurred.

(2) Claim 3—which alleges gender discrimination in violation of California Education Code § 220—fails to state a claim for the same reason that Plaintiffs' Title IX claim must be dismissed.  The standard for liability under Section 220 is identical to the Title IX standard.  In addition, Section 220 does not apply to public universities.

(3) Claims 2 and 4—which allege a negligent failure to warn or train Plaintiffs and fraud—fail to state a claim because UC is a public entity that is not subject to common-law tort claims under California law, and Plaintiffs have not identified any statute subjecting UC to liability.  In addition, Plaintiffs' failure-to-warn claim fails because UC did not have any duty to warn Plaintiffs of potential attacks by third parties.  And Plaintiffs' fraud claim must be dismissed because Plaintiffs have failed to plead fraud with the particularity required by Rule 9(b).

This Motion is based upon the Memorandum of Points and Authorities included herein and such additional authority and argument as may be presented in Defendant's reply and at any hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.     INTRODUCTION

The University of California is committed to creating and maintaining a community where all individuals who participate in University programs and activities can work and learn together in an atmosphere free of harassment, exploitation, or intimidation.  As part of that commitment, UC takes sexual harassment and sexual violence seriously.  Its policy is to respond promptly and effectively to reports of sexual harassment and sexual violence, and to take appropriate action to prevent, to correct, and when necessary, to discipline such behavior.  The appropriate action is often difficult to identify, however, and reasonable minds can differ about the best response in any particular case.  University administrators, who confront the issues of sexual harassment and sexual violence every day, are in the best position to make decisions about how to respond to reports of sexual violence within the university setting.  For that reason, the law vests this decision-making authority in colleges and universities.  When a plaintiff seeks to hold a university liable for its response to harassment by a third party, "courts should refrain from second-guessing the disciplinary decisions made by school administrators."  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).  A university may only be held liable for its response to sexual harassment or violence if it "acts with deliberate indifference to known acts of harassment in its programs or activities."  *Id.* at 633.  Furthermore, the university may only be liable if its deliberate indifference "'subject[s]' its students to harassment."  *Id.* at 644-45.

Plaintiffs' allegations in this case must be dismissed because they do not come close to meeting that high standard for imposing Title IX liability on a university.  Two of the Plaintiffs, Sofie Karasek and Nicoletta Commins, allege that they were sexually assaulted by fellow students, that UC was made aware of the assaults, that UC investigated the incidents and disciplined the assailants, and that they were not assaulted again by those assailants.  The law is clear that such facts cannot give rise to a Title IX claim.  Plaintiffs clearly disagree with the manner in which UC handled their complaints, but they have not alleged facts that would suggest that UC was deliberately indifferent to those complaints.  The third Plaintiff, Aryle Butler, alleges that she was assaulted during the summer while she was employed in Alaska, in a location and by a person

NOTICE OF MOTION AND MOTION TO DISMISS

1   over which UC did not have any control.  She has not alleged any facts that would suggest that

2   any UC official had authority to address the alleged harassment and institute corrective measures,

3   which is a necessary prerequisite of a deliberate indifference claim.

4        In addition, Plaintiffs' Title IX claim fails because none of them allege any facts that

5   would suggest that UC caused them to suffer further harassment or to be vulnerable to further

6   harassment.  Rather, by Plaintiffs' own telling of the facts, none of them underwent any

7   harassment or violence after making their reports to the UC officials with authority to address

8   Title IX complaints.  None of them even claims to have had any further contact with their alleged

9   assailants after making their complaints.

10       Plaintiffs' state-law claims should also be dismissed.  Their claim under California

11  Education Code § 220 must be dismissed along with the Title IX claim, because Section 220

12  incorporates the same standard of liability as Title IX.  In addition, Section 220 does not apply to

13  an institution of higher education such as UC.  And Plaintiffs' common-law failure-to-warn and

14  fraud claims must also be dismissed.  First, California law provides that a public entity such as UC

15  cannot be subjected to common-law liability unless a statute provides for such liability, and

16  Plaintiffs have not identified and cannot identify any such statute for either of these claims.

17  Second, Plaintiffs have failed to allege sufficient facts to support either claim.  Their failure-to-

18  warn claim should be dismissed because UC did not have any duty under California law to warn

19  about possible wrongs by third parties, and their fraud claim should be dismissed because they

20  have not identified any particular misrepresentations purportedly made by UC or its employees.

## II.   ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

22       Plaintiffs Sofie Karasek, Nicoletta Commins, and Aryle Butler each allege that they were

23  victims of sexual assault while enrolled as students at the University of California, Berkeley (the

24  "University").  These allegations are the basis for their claims that UC discriminated against them

25  on the basis of gender in violation of Title IX of the Education Amendments Act of 1972, 20

26  U.S.C. § 1681 *et seq.*, and California Education Code § 220, that UC failed to warn them of the

27  risk of sexual assault, and that UC committed fraud in its purported statements about the relative

28  safety of its campus.

**A.** **Sofie Karasek.**

Karasek alleges that she attended a trip to San Diego with the Cal Berkeley Democrats Club (the "Club") in February 2012, and that while she was there she shared a bed with three other students, including a student referred to in the Complaint as TH. (Compl. ¶¶ 5-8.) She alleges that she awoke to TH massaging her legs, back and buttocks, which continued for approximately 30 minutes. (*Id.* ¶ 9.) In April or May of that year, Karasek alleges that she and three other female students who had allegedly been assaulted by TH met with three UC representatives and reported their assaults. (*Id.* ¶ 10.). Karasek then allegedly submitted a written complaint to the Center for Student Conduct at UC on May 15, 2012. (*Id.* ¶ 12.) She alleges that she was not contacted about her complaint for a period of seven months, although she occasionally received information about the course of the investigation from the president of the Club and a board member of the Club. (*Id.* ¶¶ 13-18.) Ultimately, Karasek alleges that after submitting several requests for further information from the University, she was informed that TH had been found in violation of the Campus Code of Student Conduct, and that after further requests for information she was later informed that TH had been placed on disciplinary probation. (*Id.* ¶¶ 22, 25.) She claims that she was not given regular updates about the course of the investigation or an opportunity to participate in a disciplinary hearing, and that she was not informed that she could report her assault to law enforcement. (*Id.* ¶ 26.) Karasek does not allege that she experienced any further assaults, nor that she ever even had any further contact with her assailant, after reporting her assault to the University.

**B.** **Nicoletta Commins.**

Commins alleges that she was sexually assaulted in her off-campus apartment by a fellow student, identified in the Complaint as John Doe 2, in January 2012. (Compl. ¶ 48.) Specifically, she alleges that without her consent, John Doe 2 performed oral sex on her, digitally penetrated her, and tried to physically coerce her to perform oral sex on him. (*Id.* ¶ 51.) She subsequently reported the assault to the Tang Student Health Center at the University and to the Berkeley Police Department. (*Id.* ¶¶ 52-54.) She did not report the incident to the University administration, but she alleges that the University was "made aware" of the assault and that she received a phone call

from a representative of the University who told her that it would conduct an investigation.  (*Id.* ¶¶ 56-57.)  She alleges that she did not receive any further information about the investigation, that no hearing took place, and that she was not informed of the results of the investigation until March 2013.  (*Id.* ¶¶ 59-62.)  At that time, a University official informed her that John Doe 2 had been suspended until Fall 2015, the semester after she was set to graduate, and she was later informed that he also was prohibited from making any contact with Commins and would be on disciplinary probation for the rest of his time at the University.  (*Id.* ¶¶ 62-63.)  Commins does not allege that she experienced any further assaults, nor that she ever even had any further contact with her assailant, after the University voluntarily initiated an investigation into the alleged assault after becoming aware of it.

### C.      Aryle Butler.

Butler alleges that she was assaulted during the summer of 2012, while she was working as an assistant to Margot Higgins, a UC Berkeley Ph.D. candidate who was conducting research in Alaska.  (Compl. ¶ 28.)  Butler alleges that she was living at the Wrangell Mountains Center (the "Center"), and that a board member of the Center, identified in the Complaint as John Doe, approached her in the dining hall from behind and inserted his hands into her underwear and massaged her genitals.  (*Id.* ¶ 36.)  Butler claims that she reported the incident to Higgins, but "asked that Higgins not say anything at that time."  (*Id.* ¶ 37.)  Butler further alleges that a few days after the first incident, John Doe approached her in the library and touched her hair and shoulder while commenting on her appearance, and that later in the summer he approached her in the kitchen and rubbed her breasts underneath her clothing.  (*Id.* ¶ 38-39.)  When she returned to the University in the fall, Butler alleges that she reported the assaults to the University's Title IX coordinator.  (*Id.* ¶ 43.)  She alleges that UC has not investigated or taken any disciplinary action against John Doe.  (*Id.* ¶ 46.)

Butler does not allege that the Alaska program is controlled by or affiliated with the University, but she alleges that the University advertises for students to enroll in the program and permits them to receive academic credit for the program.  (*Id.* ¶ 32.)  She does not allege that the University has any authority or control over John Doe, or over the Center or any program housed

1  at the Center.  Butler does not allege that John Doe is a student, faculty member, or employee of

2  UC.  She alleges only that John Doe was a "guest lecturer at the University" and was "involved"

3  in an environmental restoration project at the University.  (*Id.* ¶ 34-35.)  Butler also does not

4  allege that she experienced any further assaults, nor that she ever had any further contact with

5  John Doe, after reporting her assault to the University when she returned from Alaska.

6      **D.      Additional Allegations.**

7      Plaintiffs also allege that the University "underreported" the number of sexually violent

8  incidents that occurred on campus.  (*Id.* ¶ 69.)  And they allege that the California State Auditor

9  published a report about sexual harassment and sexual violence at California universities, which

10  concluded, *inter alia*, that "universities must do more to properly educate students on sexual

11  harassment and sexual violence" and that "universities need to better inform students who file a

12  complaint of the status of the investigation and notify them of the eventual outcome."  (*Id.* ¶¶ 70-

13  72.)  Plaintiffs also allege that in 2014, a Title IX claim was filed against the University with the

14  Office of Civil Rights (*id.* ¶ 73), and that the University has a policy that students who report

15  being sexually assaulted should be informed that they have the right to report the assault to law

16  enforcement (*id.* ¶ 74).

17      Finally, Plaintiffs allege that the Department of Education's Office for Civil Rights

18  ("OCR") issued a "Dear Colleague Letter" in 2011 that sets forth a "standard of care for handling

19  reports of sexual harassment and/or assault."  (*Id.* ¶ 75.)  Plaintiffs list some of the requirements

20  outlined in the OCR letter, but they do not specifically allege which if any of these requirements

21  were not followed by UC.  Nonetheless, the Complaint alleges generally that UC "deviat[ed]"

22  from the standard of care outlined in the Dear Colleague Letter.  (Id. ¶ 78.)

23  **III.  ARGUMENT**

24
25      **A.      Plaintiffs' Complaint Must Be Dismissed if It Fails to State a Legally
              Cognizable Claim.**

26      Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the Court to dismiss a

27  complaint that fails to state a claim upon which relief may be granted. The Supreme Court has

28  emphasized that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

1   need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."

2   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662,

3   677-78 (2009) (holding that *Twombly* standards apply in all cases). "Threadbare recitals of the

4   elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

5   556 U.S. at 678.  Thus, to survive a motion to dismiss, a complaint must plead "enough facts to

6   state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Moss v.*

7   *U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to

8   dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must

9   be plausibly suggestive of a claim entitling the plaintiff to relief.").

10       UC vigorously disputes many of the factual allegations in the Complaint, especially the

11   allegations about how UC responded when Plaintiffs reported their alleged sexual assaults to

12   University officials.  However, even if one accepts these allegations as true for purposes of this

13   motion to dismiss, Plaintiffs have failed to state any claim on which relief can be granted.

14       **B.**     **<u>Plaintiffs' Title IX Claim Fails As a Matter of Law.</u>**

15       Plaintiffs' first claim for relief asserts a cause of action under 20 U.S.C. § 1681 (Title IX),

16   which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from

17   participation in, be denied the benefits of, or be subjected to discrimination under any education

18   program or activity receiving Federal financial assistance," subject to certain exceptions not at

19   issue here.  The Supreme Court has held that a school that receives federal funds, such as UC,

20   "may be liable in damages under Title IX only for its own misconduct." *Davis*, 526 U.S. at 640.

21   When a student alleges harassment by a fellow student, as in this case, the Court has cautioned

22   that Title IX only supports a private damages action in "limited circumstances." *Id.* at 643.  The

23   Ninth Circuit has recognized that *Davis* "set forth four requirements for the imposition of

24   [institutional] liability under Title IX for student-student harassment." *Reese v. Jefferson School*

25   *Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000).  First, an institution's liability is limited "to

26   circumstances wherein the recipient exercises substantial control over both the harasser and the

27   context in which the known harassment occurs." *Id.* (quoting *Davis*, 526 U.S. at 645).  Second,

28   the victim must have suffered harassment "that is so severe, pervasive, and objectively offensive

that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* (quoting *Davis*, 526 U.S. at 650).  Third, the institution must have had "actual knowledge" of the harassment.  *Id.* Fourth, the funding recipient must have acted with "deliberate indifference" to the known harassment, and this deliberate indifference must have "cause[d] students to undergo harassment or make them liable or vulnerable to it." *Id.* (quoting *Davis*, 526 U.S. at 645).

Each of these elements is a requirement for Title IX liability for student-student harassment, such that failure to adequately allege any of these four requirements renders a plaintiff's claim infirm.  Applying that standard, Plaintiffs' claims here should be dismissed for multiple independent reasons.  First, Plaintiffs have not alleged conduct by UC that rises to the level of deliberate indifference.  Second, Plaintiffs have not adequately alleged that any conduct by UC caused them to undergo harassment or made them vulnerable to it.  Finally, Plaintiff Butler has not alleged facts that would show that UC had control over her harasser or over the context in which her harassment occurred.

### 1. Plaintiffs' Title IX claim fails because Plaintiffs have not alleged that The Regents acted with deliberate indifference.

Plaintiffs have not pleaded facts sufficient to support a claim of deliberate indifference.  An educational institution acts with deliberate indifference only where its response to harassment "is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.  This is "not a mere 'reasonableness' standard," but a heightened standard that requires a plaintiff to show that the defendants' conduct was "clearly unreasonable." *Id.* at 649.  The deliberate indifference standard is an "exacting standard." *Doe v. Sch. Bd. of Broward County, Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010); *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1196 (E.D. Cal. 2009) ("'Deliberate indifference' is a high standard and requires conduct that is beyond mere negligence.").  A plaintiff must plead facts sufficient to support a finding "that the College made 'an official decision … not to remedy the violation.'" *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)); *see also Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ("Actions and

decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference.").

None of Plaintiffs' allegations suffices to meet the deliberate indifference standard.

### a.   Karasek has not pleaded sufficient facts to show deliberate indifference.

Karasek's allegations do not support an inference that UC acted in a manner that was clearly unreasonable in its response to the alleged instance of sexual assault by a fellow student. Karasek alleges that she was sexually assaulted  February 2012, that she reported the incident in a meeting with several UC representatives in April or May of that year, and that she submitted a formal written complaint on May 15, 2012.  (Compl. ¶¶8-12.)  Karasek does not allege that UC failed to respond to her complaint or that it failed to take action against the alleged perpetrator. On the contrary, the Complaint alleges that UC engaged in an "investigation and/or resolution process" (*Id.* ¶ 21), that UC informed her that her assailant had been found to be in violation of UC's Campus Code of Student Conduct (*Id.* ¶ 22), and that in response to her further inquiry a UC representative informed her that her assailant was placed on disciplinary probation and referred to counseling.  (*Id.* ¶ 25.)   These allegations show the opposite of deliberate indifference, showing instead that UC took concrete steps to respond to Karasek's complaint by conducting an investigation and disciplining the student she had accused of harassment.

Karasek's other allegations do not change this result.  Karasek alleges that she was not contacted about her complaint from when it was filed on May 15, 2012, until December 12 of that year, which represents a delay of nearly seven months (*Id.* ¶¶ 12, 20), and that she was not given updates about the investigation, encouraged to report her assault to law enforcement, or afforded the opportunity to attend a disciplinary hearing.  (*Id.* ¶ 26.)  But these are disagreements with the manner in which UC addressed her complaint, and they do not render UC's response clearly unreasonable.  As the Supreme Court has stressed, student victims of harassment are not entitled to make "particular remedial demands" about how their school should have responded to the harassment, and "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648.  A plaintiff does not adequately plead deliberate

1   indifference merely by expressing disagreement with the degree to which the institution included

2   her in the disciplinary process.  On the contrary, as noted, a Title IX plaintiff must allege "that the

3   College made 'an official decision … not to remedy the violation.'"  *Oden*, 440 F.3d at 1089

4   (quoting *Gebser*, 524 U.S. at 290).  Karasek alleges that UC *did* remedy the situation.

5           While Karasek alleges that she was not given any updates on the investigation for a period

6   of seven months, the Ninth Circuit has held that even a nine-month delay in conducting

7   disciplinary proceedings, in contravention of an institution's policy, did not support a finding of

8   deliberate indifference. *Oden*, 440 F.3d at 1089 (nine-month delay was insufficient to "permit an

9   inference that the delay was a deliberate attempt to sabotage Plaintiff's complaint or its orderly

10  resolution").  Karasek's allegations do not even rise to the level of those found insufficient in

11  *Oden*, because she alleges a shorter delay and only a delay in providing notice to her, not any

12  delay in any actual disciplinary proceedings.  Accordingly, Karasek has failed to state a claim for

13  deliberate indifference.

### b.   Commins has not pleaded sufficient facts to show deliberate indifference.

15          For similar reasons to Karasek, Commins has not adequately pleaded that UC acted with

16  deliberate indifference in response to her complaint.  Commins alleges that she was sexually

17  assaulted by a fellow student in her off-campus apartment in January 2012, and that UC was made

18  aware of the assault, although she did not report it to UC.  (Compl. ¶¶ 48, 56.)  Her allegations

19  about how UC responded to the assault do not support an inference of deliberate indifference.

20  Instead, she alleges that after the Berkeley Police Department conducted a criminal investigation,

21  UC elected to conduct a further investigation that resulted in a suspension of Commins's assailant

22  until the fall of 2015, after Commins was scheduled to graduate.  (*Id.* ¶ 62.)  In addition, UC

23  prohibited the perpetrator from contacting Commins and placed him on disciplinary probation for

24  the remainder of his studies.  (*Id.* ¶ 63.)

25          As with Karasek, Commins alleges that she was not notified of the status of UC's

26  disciplinary proceedings for a period of time, but that allegation amounts to a request to have the

27  Court "second-guess[] the disciplinary decisions made by school administrators."  *Davis*, 526 U.S.

NOTICE OF MOTION AND MOTION TO DISMISS

at 648.  Commins also complains that the punishment meted out to her assailant was insufficient, and that she was not informed of her right to appeal the punishment.  But "[a]n aggrieved party is not entitled to the precise remedy that he or she would prefer."  *Oden*, 440 F.3d at 1089; *see also Doe v. Univ. of the Pac.*, No. CIV. S-09-764, 2010 WL 5135360, at *15 (E.D. Cal. Dec. 8, 2010) ("It is well established that a school has no obligation to engage in particular disciplinary action.") (quotation marks omitted).  The mere fact that Commins may disagree with UC's disciplinary decision to suspend her assailant for more than two years does not provide any factual basis to support an inference that UC "attempt[ed] to sabotage [her] complaint or its orderly resolution," as needed to support the deliberate indifference prong.  *Oden*, 440 F.3d at 1089.

<strong>c. <u>Butler has not pleaded sufficient facts to show deliberate indifference, or to show that UC had any control over her harasser or the context in which her harassment occurred.</u></strong>

Butler likewise fails to allege sufficient facts to support an inference of deliberate indifference by UC.  Butler alleges that she was assaulted on multiple occasions by a board member at the Wrangell Mountains Center in Alaska, while she was working as a research assistant at the Center during the summer of 2012.  (Compl. ¶¶ 36-39.)  She alleges that she reported the assaults to Margot Higgins, a Ph.D. student for whom Butler was working (*Id.* ¶¶ 37, 40), and then that she reported the assaults to UC's Title IX Coordinator when she returned to the University at the end of the summer.  (*Id.* ¶ 43.)

These allegations fail even to establish the factual predicate that is necessary to state a claim of deliberate indifference, because they do not allege that any official of UC was in a position to respond to Butler's complaints.  The Supreme Court has held that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [university's] behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."  *Gebser*, 524 U.S. at 290.  Butler's claims simply do not meet that standard.  She makes no allegation that Higgins had any "authority to address" the alleged assault or to "institute corrective measures" on UC's behalf.  She alleges that Higgins was a student herself, not a UC administrator.  Butler does allege that Higgins's research was being funded by the University and that Higgins was authorized

to hire a research assistant, but these allegations do not suggest that Higgins had any "authority" to take corrective action in response to a complaint of sexual harassment.

Butler also alleges that she later reported the assaults to UC's Title IX Coordinator, but the Complaint is notably vague about what facts Butler reported to UC.  In any event, the Complaint certainly does not plead any facts that would indicate that UC's Title IX Coordinator had authority over Butler's alleged assailant, who by Butler's own allegation is a board member of an independent Center located in Alaska.  There is not even a hint in the Complaint that would explain how UC *could* have conducted any investigation or discipline of Butler's assailant. Absent any such allegation, there can be no claim of deliberate indifference.

Butler's Title IX claim should additionally be dismissed because she has not alleged that UC "exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]." *Davis*, 526 U.S. at 645; *see also Reese*, 208 F.3d at 739 (recognizing that institutional control over the harasser and the context is a "requirement[] for the imposition of … liability under Title IX").  Butler does not make any allegation—nor could she consistently with Rule 11—that her assailant was a student, faculty member, or employee of UC, and without any such allegation there can be no basis for concluding that UC "exercises significant control over the harasser." *Davis*, 526 U.S. at 646.  Butler's allegations that her assailant was from time to time a "guest lecturer" at the University and was "involved" in an on-campus environmental restoration project do not suggest that UC actually had any sort of control over him.[1]

Additionally, Butler does not offer any factual basis to support an inference that UC had any control over the Center—the context in which the harassment occurred.  Butler alleges that the University "advertises" for a program that is "house[d]" at the Center, and that UC students receive academic credit for completing that program.  (Compl. ¶¶ 29, 30.)  But these allegations in no way suggest that UC has any formal relationship with the Center itself, and much less that it

---

[1] There are many guest lectures delivered at the University almost every day of the year, and these lectures are planned and sponsored by a wide variety of groups and organizations. *See* "UC Berkeley Events," at https://events.berkeley.edu/, under the tab "Lectures."  It is implausible to suggest that UC exercises "control" over all the people who deliver these lectures.

1   exercises any control over the Center.  Courts addressing similar situations have found no

2   "substantial control."  *See Ostrander v. Duggan*, 341 F.3d 745, 750-51 (8th Cir. 2003) (affirming

3   judgment in favor of university on Title IX claim arising from sexual assault in off-campus

4   building because university "did not own, possess, or control" the building where the assault

5   occurred); *Clifford v. Regents of Univ. of Cal.*, No. 11 CV 02935, 2012 WL 1565702, at *7 (E.D.

6   Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014) (dismissing Title IX claim arising

7   from sexual assault during fraternity retreat to Lake Tahoe for failure to allege that university had

8   "substantial control" over context in which harassment occurred).

9           **d.       Plaintiffs' allegations about the "Dear Colleague Letter" do not**
                        **support their claim of deliberate indifference.**
10
            The deficiencies in Plaintiffs' Complaint are not remedied by their reference to the OCR's
11
     "Dear Colleague Letter."  Even if Plaintiffs could show that UC was not in compliance with DOE
12
     policy as outlined in the OCR letter, a "failure to comply with the [Department of Education's]
13
     regulations" does not give rise to a claim for deliberate indifference.  *Gebser*, 524 U.S. at 291-92.
14
     In fact, the letter itself expressly rules out any suggestion that its requirements may be used to
15
     support a damages claim.  *See* Office for Civil Rights, Dep't of Education, Dear Colleague Letter:
16
     Sexual Violence (Apr. 4, 2011) (available at http://www.ed.gov/ocr/letters/colleague-201104.pdf),
17
     at 4 & n. 12 (clarifying that the letter sets forth the "standard for administrative enforcement of
18
     Title IX and in court cases where plaintiffs are seeking injunctive relief" and that this standard
19
     does not apply to "private lawsuits for monetary damages").  Thus, there is no legal basis for
20
     Plaintiffs' allegation that failing to adhere to the standards of the Dear Colleague Letter constitutes
21
     deliberate indifference.
22
            **2.       UC's Conduct did not Cause Plaintiffs to Undergo or be Vulnerable to**
23                      **Harassment.**

24          A further defect in Plaintiffs' Title IX claim is their failure to allege that UC "subject[ed]"

25   them to any harassment.  *Davis*, 526 U.S. at 644-45.  For Title IX liability to attach, a federal

26   funding recipient's "deliberate indifference must, at a minimum, cause students to undergo

27   harassment or make them liable or vulnerable to it."  *Id.* at 645 (quotation marks and brackets

28   omitted).  This causation requirement means that a Title IX claim must be dismissed if there is no

allegation of any further harassment, either as a direct result of the university's conduct or due to a liability or vulnerability that arose from the university's conduct.  A federal funds recipient cannot be liable for "alleged *antecedent* harassment of female students by male students," *i.e.*, for harassment that takes place before the institution gains knowledge of it.  *Reese*, 208 F.3d at 740. When there is no allegation "that any harassment occurred after the [institution] learned of the plaintiffs' allegations," then the institution "cannot be deemed to have 'subjected' the plaintiffs to the harassment."  *Id.*

None of the Plaintiffs claim to have experienced any harassment after reporting their assaults to UC.  On the contrary, both Karasek and Commins allege a single instance of assault that was not repeated after UC was made aware of the incident, while Butler alleges that three incidents occurred, but none after she reported them to UC.  Nor have any of them alleged that they ever saw their attackers again or faced further harassment or violence.  A failure to allege subsequent harassment is fatal to a Title IX claim.  Courts have repeatedly dismissed similar complaints for failure to state a claim.  *See, e.g., Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1126 (N.D.Cal. 2013) (dismissing Title IX claim because Plaintiff had failed to allege that university's conduct had "*caused* [plaintiff] to be subject to further harassment or deprivation of rights") (emphasis in original).[2]  The Court should do the same here.

Plaintiffs may try to argue that their claim can survive without an allegation of further harassment, based on the argument that they were "made vulnerable" to harassment even if no

---

[2] *See also, e.g., Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 826 (M.D. Tenn. 2014) (dismissing Title IX claim where plaintiff made "no allegations of sexual harassment following his filing a formal sexual harassment report"); *Moore v. Murray State Univ.*, No. 12 CV 00178, 2013 WL 960320, at *5 (W.D. Ky. Mar. 12, 2013) (dismissing Title IX claim where there were "no allegations that the indifference caused [plaintiff] to experience further or additional harassment"); *Rouse v. Duke Univ.*, 914 F. Supp. 2d 717, 725 (M.D.N.C. 2012), *aff'd*, 535 F. App'x 289 (4th Cir. 2013) (university was entitled to summary judgment because plaintiff had "offered no evidence that she suffered additional sexual harassment in the months following her rape, by the rapist or by anyone else, much less that any such harassment was attributable to Duke's alleged failure to investigate"); *Elgamil v. Syracuse Univ.*, No. 99-CV-611 NPMGLS, 2000 WL 1264122, at *8 (N.D.N.Y. Aug. 22, 2000) (dismissing Title IX claim because plaintiff could not show "that actionable harassment continued to occur *after* the appropriate school official gained actual knowledge of the harassment") (emphasis in original).

1    such harassment occurred.  That argument would be incorrect as a matter of law.  As the cases

2    cited above make clear, to sustain a damages claim a plaintiff must allege that additional

3    harassment occurred after the institution had actual knowledge of harassment.  The case law uses

4    the term "make vulnerable" to describe a type of causation by which an institution's conduct can

5    be alleged to have resulted in further harassment, *i.e.*, a plaintiff can allege that further harassment

6    occurred due to a vulnerability that was created by the university's deliberate indifference.  The

7    use of the term "make vulnerable" does not mean that a claim can be brought based merely on

8    alleged "vulnerability" without an allegation that any further harassment actually occurred.  *See*

9    *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) ("Specifically, the school district's

10   deliberate indifference must either directly cause the abuse to occur or make students vulnerable to

11   such abuse, ***and that abuse must take place*** in a context subject to the school district's control.")

12   (quotation marks omitted and emphasis added).

13          But *even if* a claim could survive based on a mere allegation that an institution's conduct

14   increased a plaintiff's vulnerability to harassment, without any allegation that such harassment

15   took place, Plaintiffs' Title IX claim in this case must still be dismissed.  The only possible basis

16   for an argument that Plaintiffs were "made vulnerable" after reporting their assaults to UC is the

17   allegation by each Plaintiff that their alleged harassers were not banned from campus while

18   investigations into the incidents were ongoing.  *See* Compl. ¶¶ 17-18 (Karasek alleges that her

19   harasser was meeting with UC and was set to graduate early); *Id.* ¶ 60 (Commins alleges that her

20   harasser was "allowed to remain on campus" while Berkeley Police Department and UC

21   investigated her complaint); Id. ¶¶ 34-35 (Butler alleges that her assailant was "frequently on

22   campus").

23          These allegations, however, do not give rise to a plausible inference that Plaintiffs were

24   made vulnerable to potential harassment as a result of UC's conduct.  Plaintiffs do not allege that

25   there was ever any contact with their alleged harassers, nor do they plead any specific facts that

26   would suggest that they experienced any particular vulnerability to further harassment.  The

27   Supreme Court's opinion in *Davis*, the Ninth Circuit has explained, "requires more than non-

28   responsiveness; it requires that the indifference result in harassment or render [the plaintiff]

1   vulnerable to harassment." *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir.

2   2006).  One court recently dismissed a similar Title IX claim because "other than an occasional

3   glimpse of him on campus, there was no other contact between" the plaintiff and her harasser.

4   *Yoona Ha v. Northwestern Univ.*, No. 14 CV 895, 2014 WL 5893292 at *2 (N.D. Ill. Nov. 13,

5   2014).  The court further noted that although the plaintiff "claim[ed] that knowledge of [the

6   harasser's] presence on campus caused her considerable grief," such allegations were "not

7   actionable under Title IX." *Id.*

8        Likewise here, at most Plaintiffs have alleged that their harassers remained on campus, but

9   this does not show that UC "subjected" them to harassment and is therefore not actionable under

10  Title IX.  Indeed, if a university could be held liable under Title IX merely because it did not

11  immediately banish a student from campus after receiving a complaint about that student, this

12  would raise significant due process concerns for students accused of sexual assault and put

13  colleges in the impossible position of facing liability regardless of how they responded to such

14  complaints.  *See Davis*, 526 U.S. at 649 ("[I]t would be entirely reasonable for a school to refrain

15  from a form of disciplinary action that would expose it to constitutional or statutory claims.").

16      **C.**   **<u>Plaintiffs' Claim Under California Education Code § 220 Fails for the Same</u>**

17             **<u>Reasons as Their Title IX Claim.</u>**

18       The Court should also dismiss Plaintiffs' third claim, which alleges discrimination on the

19  basis of gender in violation of California Education Code § 220, for the same reasons that

20  Plaintiffs' Title IX claim must be dismissed.  The California courts have recognized that the state

21  legislature "intended Title IX's standards of liability to apply to a section 220 claim for *money*

22  *damages*." *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 606 (2008) (emphasis in

23  original); *id.* at 605 (applying "deliberate indifference" standard from *Davis* to Section 220 claim).

24  Following *Donovan*, the federal courts have repeatedly recognized that Section 220 claims are

25  governed by the same legal standard as Title IX claims and that dismissal of a Title IX claim

26  necessitates dismissal of a Section 220 claim arising from the same facts.  *Doe v. Willits Unified*

27  *Sch. Dist.*, No. 09 CV 03655, 2010 WL 4922645, at *6 & n. 5 (N.D. Cal. Nov. 29, 2010) *aff'd*,

28  473 F. App'x 775 (9th Cir. 2012); *Garcia*, 627 F. Supp. 2d at 1195 n. 3.

In addition, Plaintiffs' Section 220 claim fails for the independent reason that Section 220 does not apply to a university such as UC.  This section by its terms applies only to "an educational institution," Cal. Educ. Code § 220, and the same chapter of the Education Code defines "educational institution" as "a public or private preschool, elementary, or secondary school or institution; the governing board of a school district; or any combination of school districts or counties recognized as the administrative agency for public elementary or secondary schools," Cal. Educ. Code § 210.3.  Thus, Section 220 cannot give rise to a claim against a university and Plaintiffs' claim should be dismissed on that basis as well.

**D.      Plaintiffs' State Common-Law Tort Claims Should be Dismissed.**

Plaintiffs also assert a state-law tort claim for UC's alleged failure to warn or educate them about the risk of sexual assault, and a separate state-law tort claim for fraud based on UC's supposed false representations regarding the safety of its facilities.  Both of these claims fail because UC is a public entity under Section 815(a) of the California Government Code and is therefore not subject to common-law tort liability.  In addition, Plaintiffs' negligent failure-to-warn claim fails on the merits because UC did not have any duty to warn them under the circumstances alleged in the Complaint.  And Plaintiffs' fraud claim must be dismissed because Plaintiffs have failed to satisfy the heightened pleading standard for a fraud claim.

**1.      As a public entity, UC is not subject to common-law tort liability.**

Both of Plaintiffs' tort claims must be dismissed because they fail to identify any statute that makes UC subject to liability as a public entity.  "Except as otherwise provided by statute, … [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov. Code § 815(a); *see also Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 899 (2008) ("[S]ection 815 abolishes common law tort liability for public entities."); *Davis v. City of Pasadena*, 42 Cal. App. 4th 701, 703 (1996) ("Public entities have liability for injury only when that liability has been assumed by statute.").  UC is a "public entity" for purposes of Section 815(a).  *See* Cal. Gov. Code § 811.2 ("'Public entity' includes … the Regents of the University of California … .").

Plaintiffs do not identify any statute that would subject UC to liability for a failure to warn

1   them about the risk of sexual assault.  There is no such statute.  To be sure, California courts have

2   recognized that a public entity may be liable for failure to warn when a dangerous condition on its

3   property increases the risk of wrongful conduct by third parties, because there is a statute

4   regarding public entity liability for dangerous conditions on property.  *See Peterson v. San*

5   *Francisco Cmty. Coll. Dist.*, 36 Cal. 3d 799, 815 (1984) (holding college could be liable for failure

6   to warn of known danger of criminal attacks due to untrimmed foliage around parking lot and

7   stairway); Cal. Gov. Code § 835.  But this type of liability has been narrowly limited to a situation

8   in which a public entity has failed to warn of a risk created by a physical defect on its property.

9   By contrast, "[i]f the risk of injury from third parties is in no way increased or intensified by any

10   *physical* defect of the public property," then a public entity may not be held liable for the failure to

11   warn of that risk.  *Crow v. State of Cal.*, 222 Cal. App. 3d 192, 206 (1990).  Here, Plaintiffs do not

12   allege that any physical defect in UC's property increased their risk of assault from third parties,

13   and so California law does not permit UC to be held liable for failure to warn.

14       Plaintiffs do allege that UC is vicariously liable for negligent acts of its employees, citing

15   Cal. Gov. Code §815.2.  (Compl. ¶ 76.)  But that allegation does not salvage Plaintiffs' failure-to-

16   warn claim, because Plaintiffs have not identified and cannot identify any UC employee that had

17   any duty to warn them of acts by third parties.  As discussed below, there is no such duty either on

18   the part of UC or of its employees.

19       Plaintiffs' fraud claim is also barred by California law.  In addition to Section 815(a), the

20   California Government Code expressly rules out vicarious liability for fraud, stating that a "public

21   entity is not liable for an injury caused by misrepresentation by an employee of the public entity,

22   whether or not such misrepresentation be negligent or intentional."  Cal. Gov. Code § 818.1.

23   Courts have recognized that under Sections 815 and 818.1, public entities in California have

24   "absolute" immunity against liability for misrepresentations.  *Jappa v. State of Cal.*, No. 05 CV

25   1813, 2009 WL 69312, at *6 (S.D. Cal. Jan. 8, 2009); *Harshbarger v. City of Colton*, 197 Cal.

26   App. 3d 1335, 1341 (1988) ("A public employee may be liable for actual fraud, but the public

27   entity is wholly immune.").  This absolute immunity mandates dismissal of Plaintiffs' fraud claim.

28

**2.** **Plaintiffs' failure to warn claim should be dismissed because UC did not have any duty to warn them of potential attacks by third parties.**

Even aside from UC's immunity from liability for a failure to warn under these circumstances, Plaintiffs have failed to state a claim on which relief could be granted.  They do not allege any facts that would indicate that UC had any duty to warn or educate Plaintiffs about the risk of sexual assault.  Where, as here, the defendant has not created the risk in question, California law provides that, "'as a general matter, there is no duty to act to protect others from the conduct of third parties.'"  *Melton v. Boustred*, 183 Cal. App. 4th 521, 531 (2010) (quoting *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235 (2005)).  Courts may recognize the existence of such a duty when the defendant has a "special relationship" with the plaintiff, *id.* at 532, but California courts have repeatedly held that a university does not have a generalized "special relationship" with its students such that it can be held liable for the wrongful acts of third parties.  *Tanja H. v. Regents of Univ. of Cal.*, 228 Cal. App. 3d 434, 438 (1991).

In a time in which colleges are no longer expected to enforce "curfews, bed checks, dormitory searches, hall monitors, chaperons, and the other concomitant measures," *id.*, there are sound policy reasons not to impose any such duty on colleges and universities.  A decision to "make colleges liable for damages caused by third parties" could lead those colleges to "impose onerous conditions on the freedom and privacy of resident students—which restrictions are incompatible with a recognition that students are now generally responsible for their own actions and welfare."  *Id.*; *Stockinger v. Feather River Cmty. Coll.*, 111 Cal. App. 4th 1014, 1031 (2003) ("[S]ince college administrators have abandoned *in loco parentis* supervision of adult students and have recognized the students' rights to control and regulate their own lives, colleges and universities may no longer be charged with a general duty of care to supervise student activities.").  Plaintiffs' claim seeks to impose liability on UC for failure to warn Plaintiffs about the risk of crimes from fellow students, liability that is foreclosed by California law.  "College administrators have a moral duty to help educate students in this respect, but they do not have a legal duty to respond in damages for student crimes."  *Tanja H.*, 228 Cal. App. 3d at 438.

### 3. **Plaintiffs' fraud claim should be dismissed because they have failed to plead any misrepresentations with particularity.**

Plaintiffs have also failed to adequately allege a claim for fraud under the heightened pleading standard of Rule 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed R. Civ. P. 9(b).  The pleading requirements of Rule 9(b) apply to a fraud claim whether it is based on federal or state law.  *Vess v. Ciba-Geigy-Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003).  The heightened pleading standard means that fraud allegations "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* at 1106 (quotation marks omitted).

Plaintiffs' allegations fail to meet any aspect of this standard.  Plaintiffs merely allege that unnamed "officers" and "agents" of UC made unidentified "false representations" to Plaintiffs regarding the "safety of their facilities" (Compl. ¶ 87), and that UC made unidentified "statements and omissions that communicated to Plaintiffs that the University was safe and that students only experienced a minimal amount of sexual violence." (*Id.* ¶ 88).  The Complaint does not identify any specific statement that fits these generalized descriptions, nor does it identify any person who supposedly made any such statement, when any such statement was made, or the context in which any such statement was made.  Under settled law, these type of allegations "are not particular enough to satisfy Rule 9(b)" because they "do[] not identify any specific misrepresentations or specify when and where they occurred." *Vess*, 317 F.3d at 1107; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2001) (affirming dismissal of fraud allegations where plaintiff failed to "specify what the [purported misrepresentations] specifically stated" or "when he was exposed to them or which ones he found material").

The Complaint also alleges that Defendants "underreported" the number of incidents of sexual violence to the federal government, allegedly "in violation of the federal Clery Act which requires all universities to report crime statistics." (Compl. ¶ 89.)  Again, this allegation founders on a lack of any specificity about what representations were made, who made them and when, and why they were supposedly misleading.  But even assuming that this particular allegation were sufficiently specific, it still could not be the basis for fraud liability.  The Clery Act expressly provides that, "[n]otwithstanding any other provision of law, evidence regarding compliance or

noncompliance with this subsection ***shall not be admissible as evidence*** in any proceeding of any court …, except with respect to an action to enforce this subsection." 20 U.S.C. § 1092(f)(14)(B) (emphasis added).  The Clery Act also vests exclusive power to enforce its requirements in the Secretary of Education, §1092(f)(13), and provides that "[n]othing in this subsection may be construed to … create a cause of action against any institution of higher education … for any civil liability."  § 1092(f)(14)(A).  Accordingly, Plaintiffs may not rely on any allegations about Clery Act reporting to support their fraud claim.  Plaintiffs' fraud allegations lack the specificity required by Rule 9(b) and should be dismissed.

### E.   The Court Should Dismiss Without Leave to Amend.

UC previously filed a motion to dismiss Plaintiffs' First Amended Complaint, making the same legal arguments made in this motion.  ECF No. 6.  Rather than responding to that motion, Plaintiffs filed their Second Amended Complaint without UC's consent or leave of the Court, in violation of Rule 15.  Fed. R. Civ. P. 15(a).  Plaintiffs' amendment attempts to address the legal deficiencies identified in UC's prior motion, but, as discussed above, the Complaint still fails to state any claim on which relief may be granted.  "[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).  Dismissal without leave is especially warranted where, as here, a plaintiff has already amended the complaint.  *See Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999); *Lovesy v. Armed Forces Ben. Ass'n*, No. 07 CV 02745, 2009 WL 1574575, at *4 (N.D. Cal. June 3, 2009) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

### IV.   CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims against UC should be dismissed.

1  DATED:  September 24, 2015          MUNGER, TOLLES & OLSON LLP

2                                          BRADLEY S. PHILLIPS
                                           HAILYN J. CHEN
3                                          JESLYN A. MILLER
                                           THANE M. REHN

4

5

6                                      By:  _____/s/ Bradley S. Phillips_____
                                           BRADLEY S. PHILLIPS
7                                      Attorneys for The Regents of the University of
                                       California
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS