IRWIN M. ZALKIN, ESQ. (#89957)
DEVIN M. STOREY, ESQ. (#234271)
ALEXANDER S. ZALKIN, ESQ. (#280813)
RYAN M. COHEN, ESQ, (#261313)
The Zalkin Law Firm, P.C.
12555 High Bluff Drive, Suite 301
San Diego, CA 92130
Tel:  858-259-3011
Fax: 858-259-3015
Email:  Irwin@zalkin.com
          dms@zalkin.com
          alex@zalkin.com
          ryan@zalkin.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SOFIE KARASEK, individually; NICOLETTA COMMINS, individually; ARYLE BUTLER, individually; <br><br> Plaintiffs, <br><br> vs. <br><br> THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a public entity, and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No: 3:15-cv-03717-WHO <br><br> **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA** <br><br> Date:    November 3, 2015 <br> Time:   3:00 p.m. <br> Place:  Courtroom 2, 17th Floor <br> Judge: Hon. William H. Orrick |

**OPPOSITION TO DEFENDANT'S  MOTION TO DISMISS THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA**

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION ……………………………………………………………… 1

II.  STANDARD ON 12(B)(6) MOTION TO DISMISS …………………...………… 1

III.  PURPOSE OF TITLE IX ………………………………………….…………… 1

IV.  A REASONABLE JURY COULD FIND THAT DEFENDANT
ACTED WITH DELIBERATE INDIFFERENCE BOTH
PRIOR TO AND AFTER EACH PLAINTIFFS REPORTS
OF SEXUAL ASSAULT ……………………………………………...……… 2

   A.  DELIBERATE INDIFFERENCE DUE TO INSTITUTIONAL CONDUCT
   POSTDATING A SEXUAL ASSAULT …………………………..…..…… 3

      i.  CASE LAW DEFINING DELIBERATE INDIFFERENCE ……...……. 3

      ii.  DELIBERATE INDIFFERENCE BASED ON THE DOE'S
      GUIDELINES ……………………………………………..…… 4

      iii.  DEFENDANT'S DELIBERATE INDIFFERENCE TO
      PLAINTIFFS' REPORTS OF SEXUAL ASSAULT …………..…..…… 5

         a.  SOFIE KARASEK ……………………………………..…….5

         b.  NICOLETTA COMMINS …………………………………..… 7

         c.  ARYLE BUTLER ……………………………………… 11

   B.  DELIBERATE INDIFFERENCE DUE TO INSTITUTIONAL
   CONDUCT PREDATING PLAINTIFFS' REPORTS OF
   SEXUAL ASSAULTS ………………………………………………… 11

V.  DEFENDANT'S DELIBERATE INDIFFERENCE CAUSED
PLAINTIFFS TO UNDERGO HARASSMENT AND OR MADE
PLAINTIFFS VULNERABLE TO ADDITIONAL HARASSMENT …………. 13

VI.  PLAINTIFFS' EDUCATION CODE § 220 CLAIMS ARE
PROPER ………………………………………………………………..... 17

VII.  DEFENDANT IS VICARIOUSLY LIABLE FOR THE FAILURE
OF ITS EMPLOYEES TO ADEQUATELY WARN, TRAIN OR
EDUCATE PLAINTIFFS ABOUT THE RISK OF SEXUAL
ASSAULT ………………………………………………………………..... 18

VIII.  DEFENDANT IS NOT IMMUNE FROM LIABILITY
ARISING OUT OF PLAINTIFFS' FRAUD CAUSE OF
ACTION ………………………………………………………………..... 21

IX.  CONCLUSION ……………………………………………………………… 23

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA**

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alexander v. City and County of San Francisco,*
  29 F.3d 1355 (9th Cir.1994) …………………………………………………...3

*Blair v. City of Pomona,*
  206 F.3d 938 (9th Cir. 2000) …………………………………..……… 3

*Braden v. Wal-Mart Stores, Inc.,*
  588 F.3d 585 (8th Cir. 2009) …………………………………..……………1

*Brown v. Hot, Sexy & Safer Productions,*
  68 F.3d 525 (1st Cir.1995) …………………………….……………... 15

*Bruning v. Carroll Cmty. Sch. Dist.,*
  486 F. Supp.2d 892 (N.D. Iowa 2007) ……………………..……………….. 3

*Canty v. Old Rochester Reg'l Sch. Dist.,*
  66 F. Supp. 2d 114 (D. Mass. 1999) …………………………….…….. 4

*Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.,*
  467 U.S. 837 (1984) …………………………………………….……… 4

*Curtis, Collins & Holbrook Co. v. U.S.,*
  262 U.S. 215 (1923) ………………………………………………… 10

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.,*
  526 U.S. 629 (1999). …………………………………………… 2, 13, 14

*Doe v. Derby,*
  451 F.Supp.2d 438 (2006) …………………………………….. 3, 16

*Doe v. Oyster River Co-op. Sch. Dist.,*
  992 F. Supp. 467 (D.N.H. 1997) …………………………………………3, 4

*Doe v. School Admin. Dist. No. 19,*
  66 F.Supp.2d 57 (D.Me.1999) …………………………………….... 15

*Doe A. v. Green,*
  298 F. Supp. 2d 1025 (D. Nev. 2004) …………………………………….. 4

*Doe ex rel. Doe v. Coventry Bd. of Educ.,*
  630 F. Supp. 2d 226 (D. Conn. 2009) …………………………………….. 15

*Franklin v. Gwinnett County Pub. Schools,*
  503 U.S. 60 (1992) ……………………………………………………… 2, 3

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA**

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Johnson v. State of Cal.,*
   207 F.3d 650 (9th Cir. 2000) ……………………………………..…… 1

*Jackson v. Birmingham Bd. of Educ.,*
   544 U.S. 167 (2005) …………………………………………………… 1, 2

*Jane Doe A v. Green.,*
   298 F. Supp. 2d 1025 (2004) …………………………………….…… 2

*Jappa v. California,*
   2009 WL 69312 (S.D. Cal. Jan. 8, 2009) ……………………………..… 21

*Jennings v. Univ. of N.C.,*
   482 F.3d 686 (4th Cir. 2007) ………………………………………… 3, 4

*Kelly v. Yale U.,*
   2003 WL 1563424 (D. Conn. Mar. 26, 2003) ………………..………... 15

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir.2001) ………………………………………… 3

*Lopez v. Metropolitan Government of Nashville and Davidson County,*
   646 F.Supp. 891 (M.D.Tenn.2009) ………………………………….… 15

*Moore v. Kayport Package Express, Inc.,*
   885 F.2d 531 (9th Cir. 1989) ………………………………………… 22

*Murrell v. Sch. Dist. No. 1,*
   186 F.3d 1238 (10th Cir. 1999) ……………………………………… 3

*Mut. Life Ins. Co. of New York v. Hilton-Green,*
   241 U.S. 613 (1916) ………………………………………………… 10

*North Haven Bd. of Educ. v. Bell,*
   456 U.S. 512 (1982) …………………………………………………..2

*Oden v. N. Marianas Coll.,*
   440 F.3d 1085 (9th Cir. 2006) ………………………………………... 6

*Odom v. Microsoft Corp.,*
   486 F.3d 541 (9th Cir. 2007) ………………………………………… 22

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Oviatt By and Through Waugh v. Pearce,*
    954 F.2d 1470 (9th Cir.1992) …………………………………..…………..3

*Perrin v. Gentner,*
    177 F.Supp.2d 1115 (D.Nev.2001) …………………….…………………... 3

*Rescuecom Corp. v. Google Inc.,*
    562 F.3d 123 (2d Cir. 2009) …………………………………………..….. 1

*Roe ex rel. Callahan v. Gustine Unified School Dist.,*
    678 F. Supp. 2d 1008 (E.D. Cal. 2009) ……………………………………… 15

*Sanderson v. HCA-The Healthcare Co.,*
    447 F.3d 873 (6th Cir. 2006). ……………………………………………… 22

*Siewert v. Spencer-Owen,*
    497 F. Supp. 2d 942 (S.D. Ind. 2007) ……………………………………… 4

*Simpson v. U. of Colorado Boulder,*
    500 F.3d 1170 (10th Cir. 2007) ………………………………………… 3, 11

*S.S. v. Alexander,*
    177 P.3d 724 (Wash. App. Div. 1 2008) …………………………….…. 15

*Stanley v. Trustees of California State U.,*
    433 F.3d 1129 (9th Cir. 2006) ………………………………………... 14, 15

*Star v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ……………………………………………1

*Theno v. Tonganoxie Unified Sch. Dist. No. 464,*
    377 F. Supp. 2d 952 (D. Kan. 2005) …………………………………………...3

*Vance v. Spencer County Pub. Sch. Dist,.*
    231 F.3d 253 (6th Cir. 2000) ………………………………… 3, 4, 15

*Videckis v. Pepperdine U.,*
    2015 WL 1735191 (C.D. Cal. Apr. 16, 2015) ………………………………... 18

*Williams v. Bd. of Regents of U. System of Georgia,*
    477 F.3d 1282 (11th Cir. 2007) ………………………………………….. 3, 15

*Yoon Ha v. Northwestern Univ.,*
    2014 WL 5893292 (N.D. Ill. Nov. 13, 2014) …………………………….... 16

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**STATE CASES**

*Baldwin v. State of* Cal.,
   6 Cal.3d 424 (1972) …………………………………………………. 21

*Brown v. Compton Unified Sch. Dist.*,
   68 Cal.App.4[th] 114 (1998) …………………………………………… 21

*C.A. v. William S. Hart Union High Sch. Dist.*
   53 Cal.4th 861 (2012) …………………………………………….... 18

*Comm. on Children's Television, Inc. v. Gen. Food Corp.*,
   35 Cal.3d 197 (1983) …………………………………………… 22

*Donovan v. Poway Unified Sch. Dist.*,
   167 Cal.App.4th 567 (2008) …………………………………… 17

*Harshbarger v. City of Colton*,
   197 Cal.App.3d 1335 (1988) ………………………………………… 21

*Johnson v. State*,
   69 Cal.2d 782 (1968) ………………………………………………… 21

*Juarez v. Boy Scouts of Am.*,
   81 Cal.App.4th 377 (2000) ………………………………………… 20

*Michael J. v. Los Angeles County Dept. of Adoptions*,
   201 Cal.App.3d 859 (1988) ……………………………………….... 21

*Rowland v. Christian*,
   69 Cal.2d 108 (1968) …………………………………………….... 20

*Tokeshi v. Cal.*,
   217 Cal.App.3d 999 (1990) ……..………………………………… 21

**STATE STATUTES**

Cal. Educ. Code § 210.3 ……………………………………… 17

Cal. Educ. Code § 220 ……………………………………….... 17

Cal. Educ. Code § 66270 ……………………………………... 17, 18

Cal. Gov. Code §818.8 ………………………………………….21

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

**OTHER AUTHORITIES**

Office for Civil Rights, Office for Civil Rights, Dep't of Education, Dear Colleague Letter: Sexual Violence (Apr. 4, 2011) (available at http://www.ed.gov/ocr/letters/colleague-201104.pdf) ………………………………………………………4, 5, 7, 10, 19

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

## I.      INTRODUCTION

This case arises out of Defendant's failure to adequately respond to each Plaintiff's respective report that she had been sexually assaulted.  Defendant argues that Plaintiffs' claims should be dismissed because Plaintiffs' allegations cannot support a finding of liability under Title IX or Cal. Educ. Code § 220, that it owed no duty to Plaintiffs, and that it is immune from Plaintiffs' fraud claim, and that Plaintiffs have not pled allegations with the sufficient specificity to support a claim of fraud.

As demonstrated below, Plaintiffs' allegations for Title IX and Educ. Code § 220 are sufficient for a reasonable jury to find liability.  Moreover, Defendant undertook to warn, train and/or educate Plaintiffs about sexual violence on campus, and therefore owed Plaintiffs a duty to do so competently.  Finally, Plaintiffs allegations are sufficiently specific to support their fraud allegation, and Defendant is not immune from fraud liability.

## II.     STANDARD ON 12(B)(6) MOTION TO DISMISS

"When reviewing a motion to dismiss, a court must 'accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.'"  *Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127 (2d Cir. 2009) (*quoting Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001)).  All reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).  That is, when a complaint's allegations are capable of more than one inference, the court must adopt whichever plausible inference supports a valid claim.  *Star v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).  Further, "the rule of liberal construction is 'particularly important in civil rights cases.'"  *Johnson v. State of Cal.,* 207 F.3d 650, 653 (9th Cir. 2000) (quoting *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987)).

## III.    PURPOSE OF TITLE IX

In order to put the instant issues into context, the following is a brief summary of the Supreme Court's recognition of Title IX's purpose and policy objectives.  First, the Court has recognized that, "[t]he statute is broadly worded." *Jackson v. Birmingham Bd. of Educ.*, 544

U.S. 167, 179 (2005).  Hence, "[t]here is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language.'" *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) (quoting *United States v. Price*, 383 U.S. 787, 801 (1966).  Further, "'[d]iscrimination' is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." *Jackson*, 544 U.S. at 175.

Congress enacted Title IX not only to prevent the use of federal dollars to support discriminatory practices, but also 'to provide individual citizens effective protection against those practices.'" *Jackson*, 544 U.S. at 180 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1946).  "Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe." *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 75 (1992).

Unambiguously, the Supreme Court has recognized the broad, sweeping nature of Title IX to protect victims of discrimination, and minimize any subsequent effects stemming from such discrimination.

**IV.    A REASONABLE JURY COULD FIND THAT DEFENDANT ACTED WITH DELIBERATE INDIFFERENCE BOTH PRIOR TO AND AFTER EACH PLAINTIFFS REPORTS OF SEXUAL ASSAULT**

In order for an educational institution to be held liable under Title IX, a plaintiff must prove: (1) the educational institution is the recipient of federal funding, (2) the institution acted with deliberate indifference, (3) to sexual harassment/assault of which they had actual knowledge, (4) that is so severe, pervasive and objectively offensive so as to deprive the victim of access to the educational opportunities and/or benefits provided by the school.  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).  Defendant, here, contends that each Plaintiff cannot show, as a matter of law that Defendant acted with deliberate indifference to their reports of sexual assault.

Because this standard "does not lend itself well to a determination by the Court on summary judgment," courts have permitted claims to go to juries if some evidence supports a finding of indifference.  *See Jane Doe A v. Green.*, 298 F. Supp. 2d 1025, 1036 (2004).  This is also the

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

view of the Ninth Circuit. *See Oviatt By and Through Waugh v. Pearce,* 954 F.2d 1470, 1478 (9th Cir.1992)("Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury.") (citing *Davis v. Mason County,* 927 F.2d 1473, 1482 (9th Cir.1991)). *See also Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1367 (9th Cir.1994); *Blair v. City of Pomona,* 206 F.3d 938, 2000 (9th Cir. 2000); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir.2001); *Perrin v. Gentner*, 177 F.Supp.2d 1115, 1124 (D.Nev.2001). A finding of deliberate indifference can be based on institutional behavior that predates and/or postdates the subject sexual assault. *Williams v. Bd. of Regents of U. System of Georgia*, 477 F.3d 1282 (11th Cir. 2007). *See also Simpson v. U. of Colorado Boulder,* 500 F.3d 1170 (10th Cir. 2007) (finding deliberate indifference for a school's conduct predating the sexual assault of the plaintiffs).

### A.  Deliberate Indifference Due To Institutional Conduct Postdating A Sexual Assault

There has been significant case law throughout the country interpreting the definition of "deliberate indifference." Further, the Department of Education ("DOE") has promulgated guidelines that establish clear policies and procedures an educational institution must follow, a departure from which also evidences deliberate indifference.

### i.  Case Law Defining Deliberate Indifference

Courts have routinely recognized the following as evidence of "deliberate indifference" within the meaning of the standard outlined in *Davis*: an institution's failure to properly investigate a claim. *See Jennings v. Univ. of N.C.,* 482 F.3d 686, 694 (4th Cir. 2007); *Vance v. Spencer County Pub. Sch. Dist,.* 231 F.3d 253, 259 (6th Cir. 2000); *Murrell v. Sch. Dist. No. 1,* 186 F.3d 1238 (10th Cir. 1999); *Bruning v. Carroll Cmty. Sch. Dist.,* 486 F. Supp.2d 892 (N.D. Iowa 2007); *Doe v. Oyster River Co-op. Sch. Dist.,* 992 F. Supp. 467, 481 (D.N.H. 1997); An institution's failure to notify law enforcement of a criminal act, or affirmatively discouraging the victim from reporting the act to law enforcement. *See Franklin*, 503 U.S. at 64; *Vance*, 231 F.3d at 262; *Murrell*, 186 F.3d at 1238; An institution's failure to meaningfully and appropriately discipline the student-assailant. *See Williams,* 477 F.3d 1282; *Vance,* 231 F.3d at

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

262; *Murrell,* 186 F.3d 1238; *Doe v. Derby*, 451 F.Supp.2d 438 (2006); *Theno v. Tonganoxie Unified Sch. Dist. No. 464,* 377 F. Supp. 2d 952, 977 (D. Kan. 2005); *Doe v. Oyster River Co-op. Sch. Dist.,* 992 F. Supp. at 481; *Siewert v. Spencer-Owen,* 497 F. Supp. 2d 942 (S.D. Ind. 2007); An institution's minimization of the discriminatory import of sexual assault. *See Jennings*, 482 F.3d at 700; *Siewert*, 497 F. Supp. 2d at 954; An institution's treatment of the victim and perpetrator equally. *Siewert*, 497 F. Supp. 2d at 954; If the assailant, and student body at large, are left to believe that the institution tacitly approved the harassing behavior. *Siewert*, 497 F. Supp. 2d at 954; Conducting an investigation, but nothing more. *Vance*, 231 F.3d at 260; *Doe A. v. Green,* 298 F. Supp. 2d 1025, 1036 n.4 (D. Nev. 2004); And an institution's continued use of "ineffective methods to no acknowledged avail." *Vance*, 231 F.3d at 261; *Canty v. Old Rochester Reg'l Sch. Dist.*, 66 F. Supp. 2d 114 (D. Mass. 1999).

### ii.  Deliberate Indifference Based on the DOE's Guidelines

In an effort to provide institutions with information to assist them in meeting their obligations under Title IX, the Department of Education ("DOE"), the entity to whom Congress delegated the authority to implement and enforce Title IX, promulgated a set of directives in its Dear Colleague Letter of 2011 ("DCL")[1].  *See* Office for Civil Rights, Office for Civil Rights, Dep't of Education, Dear Colleague Letter: Sexual Violence (Apr. 4, 2011) (available at http://www.ed.gov/ocr/letters/colleague-201104.pdf) at 3.  The DCL is particularly significant, given the deference afforded to the interpretation of a statute by an agency responsible for its implementation and enforcement.  *See Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.,* 467 U.S. 837, 865-66 (1984) (acknowledging that when an agency has interpreted a statute in a reasonable way, "federal judges – who have no constituency – have a duty to respect legitimate policy choices made by those who do.")

---

[1] This court may properly consider this document as evidence in support of Plaintiffs' opposition to Defendant's 12(b)(6) motion.  *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir.2002) ("However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'")

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

With respect to addressing a report of sexual assault, the DCL states that "Title IX requires the school to take <u>immediate action</u> to eliminate the harassment, prevent its recurrence, and address its effects." *DCL, supra,* at 4 (emphasis added). This includes the requirement that, upon receiving a complaint of sexual assault, the institution must inform the complainant of their right to file a criminal complaint, and not discourage them from doing so. *Id.* at 10. Further, a school's response should be prompt and equitable. *Id.* at 9. The institution must conduct its own investigation, regardless of the status of any criminal investigation, and take immediate steps to protect the complainant and the school community at large. *Id.* Based on the experience of the DOE, the DCL estimates that a resolution should be achieved within 60 days of receiving a complaint of sexual assault. *Id.* at 12.

With regard to the actual investigative procedure, the DCL requires that: (1) the school provide both parties with an equal opportunity to present witnesses and evidence, and to have similar and timely access to any information to be used by either party at the hearing, (2) the allowance of counsel for both parties, if the school allows for representation at the hearing, (3) an appellate process, equally accessible to both parties, and (4) anyone involved in the grievance procedure be adequately trained on handling complaints of sexual harassment/violence. *Id.* at pg. 11-12.

The DCL requires notice of a school's grievance procedures and recommends that the notice specify the time in which (1) the school will complete its full investigation, (2) the parties will receive notification of the outcome of the investigation, and (3) the parties may appeal. *Id.* at pg. 12. It further recommends that the parties be given periodic status updates. *Id.*

### iii. <u>Defendant's Deliberate Indifference To Plaintiffs' Reports of Sexual Assault</u>

Whether analyzed under the standards set forth by various courts across the country, or by the standards set by the DOE, a reasonable jury could find that Defendant acted with deliberate indifference to each Plaintiff's report of sexual assault.

#### a. <u>Sofie Karasek</u>

After lodging a verbal complaint with the UC Berkeley's ("University") Title IX office, Karasek independently learned that she needed to submit a written report which she did on May

---

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

15, 2012. (Complaint, ¶¶ 10-12.)    Karasek was never contacted by the administration until December 12, 2012. (*Id.* ¶ 20.)   During this time, the University was conducting backdoor meetings with Karasek's assailant.   (*Id.* ¶ 17.)   Karasek was not contacted about any investigation, offered a hearing on the matter where she would have an opportunity to present witnesses, or advised of her right to report to law enforcement.  (*Id.* ¶¶ 21, 26.)  Karasek later independently discovered that the University actually discouraged the club in which both she and her assailant were participating when she was sexually assaulted, from removing her assailant from the club, for fear that he may assault another student in a different club and there would not be the same support structure for that future victim.  (*Id.* ¶ 14.)

Later, when she learned that her assailant was graduating in December 2012, she asked the University for an update on her complaint.  (*Id.* ¶ 19.)  She received no response.  (*Id.*)  Finally, on December 12, 2012, Karasek received an e-mail telling her the matter had been resolved through an early resolution process but did not disclose the outcome. (*Id.* ¶ 20.)  During this entire time her assailant had been allowed to remain on campus.  On December 17, 2012, after he graduated, Karasek was informed that her assailant had been found to be in violation of the Campus Code of Student Conduct, but was not advised of what disciplinary action had been taken.  (*Id.* ¶ 22.)  Finally, in September of 2013, sixteen months after filing her report, and ten months after her assailant was allowed to graduate early, Karasek was informed that her assailant had been placed on a disciplinary probation and had engaged in some counseling measures.  (*Id.* ¶¶ 24-25.)  Further, any appeal at that point would have been futile given that her assailant was allowed to graduate early ten months prior.

The University's response to Karasek's complaint was woefully inadequate.  In support of its contention that Karasek's claims fail as a matter of law, Defendant relies on *Oden v. N. Marianas Coll.*, 440 F.3d 1085 (9th Cir. 2006) for the proposition that even a nine month delay in resolving a complaint of sexual assault is not sufficient to establish deliberate indifference. (Defendant's motion at 10:5-13).  Defendant's reliance on *Oden* is unpersuasive.  In *Oden*, the court rejected the plaintiff's argument that a nine-month time period for resolving her complaint of sexual assault constituted deliberate indifference because the plaintiff had engaged in actions

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

that caused the delay.  *Id.* at 1089.  Specifically, the plaintiff informed the school that she was seeking legal representation, and later, the plaintiff moved out of the state while the investigation was still pending.  *Id.*  In fact, in direct contrast to Defendant's position, the *Oden* court specifically acknowledged that, "We need not and do not decide that a delay never can constitute deliberate indifference…" *Id.*  Rather, the court simply found that the record before it did not support a finding that the school acted with deliberate indifference because of the nine month delay.  *Id.*

Karasek's allegations do not amount to "particular remedial demands" or a simple "disagreement" with the manner in which her claim was handled, as Defendant argues.  In fact, the DCL specifically instructs that informal mechanisms, such as the one used to resolve Karasek's claim, are never appropriate in cases involving allegations of sexual assault.  *DCL*, *supra*, at 8.  Under any standard articulated, when given the exceedingly liberal interpretation afforded to civil rights plaintiffs, a reasonable jury could find that the University's actions and inactions amounted to a clearly unreasonable response to her report.  For this reason, Defendant's motion must be denied.

### b.  <u>Nicoletta Commins</u>

In January of 2012, Commins was sexually assaulted by another University student.  (Compl., ¶ 48.)  The very next day, she reported her assault to the Tang Student Health Center at the University, and subsequently to the Berkeley Police Department.  (*Id.* ¶¶ 52, 54.)  The University was made aware of her assault, likely by either the Tang Center or the Berkeley Police Department.  (*Id.* ¶ 56.)  A representative from the Title IX office contacted Commins, and Commins informed this representative that she would like for the University to process and investigate her assault.  (*Id.* ¶ 57.)  Commins was told that no investigation could commence until after the criminal investigation had concluded.  (*Id.*)  Commins specifically requested that the investigation commence independent of the criminal investigation, (as required by the DCL), but her request was never acknowledged.  (*Id.* ¶ 58.)  Later, a representative from the Office of Student Conduct contacted Commins to inquire if she would still like to pursue an investigation, to which Commins answered in the affirmative.  (*Id.* ¶ 61.)

---

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

The next contact from the University was in March 2013 to an e-mail address Commins had not used in some time  stating that her assailant had been suspended until the Fall of 2015 – the semester after Commins was set to graduate.  (*Id.* ¶ 62.)  Unaware of the March e-mail, Commins contacted the Office of Student Conduct for an update in July 2013.  (*Id.* ¶ 63.)  The Office of Student Conduct responded again that her assailant had been suspended until the Fall of 2015, that he had to complete a reflective writing assignment, he was prohibited from contacting Commins in the future, and he would be on disciplinary probation when he returned to campus in the Fall of 2015.  (*Id.*)

Commins was not included in any investigation, was never given any updates regarding the investigation, nor was she allowed to present her claim at a disciplinary hearing.  (*Id.* ¶ 61.)  She was never informed of any right to appeal the outcome of the investigation.  (*Id.* ¶ 64.)  Throughout the entire "investigatory" process, her assailant was allowed to remain on campus, unrestricted.  (*Id.* ¶ 60.)  Finally, upon graduating, Commins matriculated at the University for Graduate School.  (*Id.* ¶ 65.)  Meanwhile, John Doe 2 had been convicted of felony assault for his sexual assault of Commins.  (Ex. C.)  Despite her protestations that she does not feel safe with her convicted assailant allowed on campus, the University has nonetheless informed Commins that her assailant will be allowed to return to campus.[2]  (*Id.* ¶ 67.)

Here again, Commins' allegations are not simply a disagreement with the way in which her complaint was handled by Defendant.  Instead, her allegations represent a significant departure from the standards articulated in the DOE, including the requirement that allegations of sexual abuse must never be resolved through an informal mechanism.  Moreover, her allegations fall squarely within the conduct recognized by courts all over this country as amounting to "deliberate indifference."  A reasonable jury could unquestionably find that Defendant acted with deliberate indifference in response to Commins' report that she was sexually assaulted.  Thus, here too, because this is a factual question best suited for jury determination, and given the incredibly liberal standard afforded to civil rights plaintiffs,

---

[2] Defendant again relies on *Oden* to support its claim that Commins' allegations cannot rise to the level of deliberate indifference as a matter of law.  For the same reasons articulated above under the heading "Sofie Karasek," the holding in *Oden* is equally inapplicable here.

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

Defendant's argument that Commins' claims must fail as a matter of law should be rejected.

### c. **Aryle Butler**

During the summer of 2012, Butler was serving as a paid, undergraduate research assistant for Margot Higgins ("Higgins"), a University PhD student funded and authorized by the University to conduct research in Alaska. (Compl., ¶¶ 28-30.) While there, Butler lived at the Wrangell Mountains Center (the "Center"), which also housed the Alaska Wildlands Studies Program (the "Program"). (*Id.* ¶ 31.) University students that enrolled in the Program for University credit were also housed at the Center. (*Id.*) During her time living at the Center, Butler was sexually assaulted three times by John Doe, an administrator of the Program. (*Id.* ¶¶ 36, 38, 39.) After Butler's first assault, she reported it to Higgins but did not reveal the name of her assailant. (*Id.* ¶ 37.) Higgins specifically asked Butler if John Doe was her assailant, to which Butler answered in the affirmative. (*Id.*) This suggests that Higgins and therefore the University was aware that John Doe had engaged in similar behavior in the past. After Butler reported her second assault, Higgins, and the University, again did nothing. (*Id.* ¶¶ 38, 41.) After Butler reported her third assault, Higgins finally instructed Butler to leave the Center where she was staying, and sleep in Higgins cabin, away from John Doe. (*Id.* ¶ 40.) However, Higgins still did nothing substantive in response to Butler's third report. (*Id.* ¶ 41.) Upon finishing her commitment, Butler was told by Higgins that Higgins spoke to John Doe, and that John Doe "really gets it this time." (*Id.* ¶ 42.)

Upon returning to the University, Butler reported her assaults to the Title IX office. (*Id.* ¶ 43.) In response to Butler's report to the University directly, the University did nothing. (*Id.* ¶ 46.) Surely, complete inaction is a clearly unreasonable response to a report of sexual assault.

Defendant argues that it cannot be liable for its deliberate indifference to Butler's report of assault because nobody at the University was in a position of sufficient authority to have taken corrective measures on the University's behalf. This position ignores Butler's allegations that the University housed both her, and its students in the Program at the Center. One would think that a report that an administrator of the Center was sexually assaulting a female student would prompt the University to investigate and determine if it was safe for their students to

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

remain living there.[3]  One corrective measure that could have been taken would have been to house students in a facility that did not allow access to a known, dangerous person.

Finally, Defendant argues that Butler's claim should be dismissed because she has not alleged that the University exercised control over both the harasser, and the context in which the harassment occurred.  On this point, Defendant's deliberate indifference to Butler's reports in Alaska, and later, to her report to the Title IX office can independently support liability.

With regard to the first instance of deliberate indifference, it can be reasonably inferred from Butler's allegations that the University maintained some exercise of control over the Center, given that the University housed its students there while they were enrolled in the Program, and receiving University credit.  Moreover, that John Doe was a third party did not absolve Defendant of its requirement to process and investigate Butler's complaint.  *See* DCL, *supra*, at 9 (requiring the "[a]pplication of the procedures to complaints alleging harassment carried out by…third parties.")

With regard to the second instance of deliberate indifference, Defendant undoubtedly controlled the context of the harassment, that is, the likely and pervasive possibility that Butler would encounter her assailant on campus.  Defendant also controlled the harasser himself, in that he was allowed to come to campus, unrestricted, as a frequent guest lecturer and to work on an environmental restoration project.  Defendant's position that there are too many guest lecturers on campus for them to possibly be able to know about, let alone control, is disingenuous and only adds to Butler's deliberate indifference claim.  Surely, if it intended to act with any semblance of appropriateness in response to Butler's claim, Defendant could have restricted John Doe while he was on campus, or even prevented him from coming to campus

---

[3] Defendant may argue that it did not have actual knowledge of Butler's reports while she was in Alaska.  However, a principal is charged with the knowledge of the agent acquired by the agent in the course of the principal's business.  *Curtis, Collins & Holbrook Co. v. U.S.*, 262 U.S. 215, 222 (1923); *See also Mut. Life Ins. Co. of New York v. Hilton-Green*, 241 U.S. 613, 622 (1916) ("The general rule which imputes an agent's knowledge to the principal is well established").  Here, Butler has alleged that Higgins was a PhD candidate at the University, and was authorized and funded by the University to conduct research in that capacity, and to hire Butler.  Without being privy to the exact relationship between Higgins and the University, it can be reasonably inferred that Higgins was serving as the University's agent while she was conducting research in Alaska, and supervising Butler.  Thus, Butler's reports to Higgins are imputed to the University.

altogether while it conducted an investigation. Instead, Defendant did nothing. Defendant should not be able to skirt liability because it cannot, or chooses not to handle its affairs competently.

Here, again, by doing nothing, a reasonable jury could find that Defendant's response to Butler's reports was clearly unreasonable. Thus, Defendant's motion must be denied.

**B.** **Deliberate Indifference Due To Institutional Conduct Predating Plaintiffs' Reports of Sexual Assaults**

The deliberate indifference inquiry is not limited to an educational institution's conduct postdating a report of sexual assault. A school's generally inadequate response to a known, institutional problem of sexual violence can equate to deliberate indifference for purposes of Title IX. *Simpson*, 500 F.3d at 1170. In *Simpson*, two female students at the University of Colorado Boulder were sexually assaulted by members of the school's football team, and non-student football recruits at an off-campus party. *Id.* at 1173. The women then proceeded to file a civil lawsuit against the school, alleging violation of Title IX, among other allegations. *Id.* at 1174. The trial court granted summary judgment in favor of the school, on the grounds that the school did not have actual notice of these particular assaults, and therefore, could not have acted with "deliberate indifference" to the assaults. *Id.* The appellate court reversed, holding in part, that a school's policies which have the effect to promote the possibility of sexual violence, their inaction in the face of knowledge that sexual violence is prevalent, and/or their inaction despite actual knowledge of sexual assaults that have occurred, amounts to deliberate indifference within the meaning of Title IX. *Id.* at 1184. Specifically, the court noted that in order to determine the existence of "deliberate indifference," the relevant inquiry is whether the risk of a sexual assault occurring within a given context was obvious. *Id.* at 1180-81.

The court held that the risk in *Simpson* was obvious because the school had general knowledge of the substantial risk of sexual assaults occurring during recruiting trips, the school specifically knew that sexual assaults had occurred during prior recruiting visits, and the school nevertheless maintained policies and procedures that proved ineffective and inadequate in deterring sexual violence during recruiting efforts. *Id.* at 1184. Based on this evidence alone,

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

and not on any actions taken or not taken by the school in response to the plaintiffs' actual sexual assaults, the court acknowledged that a jury could infer that the need for different, more effective training and policies was so obvious, and the inadequacy of the present policies and procedures so likely to result in sexual violence, that in maintaining the status quo, the school acted with deliberate indifference.  *Id.* at 1184-85.

Here, the allegations support a finding of deliberate indifference antecedent to Plaintiffs' respective reports of sexual assault.  Plaintiffs have alleged that "…the University underreported the amount of sexually violent incidents that occurred on campus during the years prior to Plaintiffs' enrollment at the University." (Compl., ¶ 69.)  Plaintiffs also allege that according to a California state audit, referring to the University as one of four audited universities, "(1) The universities do not ensure that all faculty and staff are sufficiently trained on responding to and reporting these incidents to appropriate officials, (2) Certain university employees who are likely to be the first point of contact are not sufficiently trained on responding to and reporting these incidents, (3) The universities must do more to properly educate students on sexual harassment and sexual violence, (4) The universities did not always comply with requirements in state law for distribution of relevant policies, (5) The universities need to better inform students who file a complaint of the status of the investigation and notify them of the eventual outcome." (*Id.* ¶ 72).  Additionally, Plaintiffs allege that thirty-one sexual assault victims have filed a Federal Clery Act complaint with the Department of Education, alleging that the University failed to adequately respond to their reports of sexual assault as far back as 1979. (*Id.* ¶ 73.)  Finally, although the University had a policy to inform victims of their rights under the law, as well as their ability to report their assaults to law enforcement (*Id.* ¶ 74), they did not adhere to those policies in dealing with Plaintiffs' claims.

It can be reasonably inferred from Plaintiffs' allegations that (1) the University's policies had the effect of promoting the possibility of sexual violence, (2) that they failed to act, despite knowledge that sexual violence was prevalent – and in fact took affirmative steps to hide the pervasiveness of the problem, (3) that they failed to act despite actual knowledge of sexual assaults that had occurred as far back as 1979, and (4) that they failed to comply with their own

policy of informing victims of their rights under the law and ability to report their assaults to law enforcement.  Given that on a motion to dismiss all facts and reasonable inferences must be viewed in the light most favorable to the plaintiff, based on the above, a reasonable jury could find that Defendant's actions prior to Plaintiffs' reports of sexual assault amounted to deliberate indifference. Accordingly, Defendant's motion must be denied.

## V.  DEFENDANT'S DELIBERATE INDIFFERENCE CAUSED PLAINTIFFS TO UNDERGO HARASSMENT AND OR MADE PLAINTIFFS VULNERABLE TO ADDITIONAL HARASSMENT

Defendant contends that it cannot, as a matter of law, be liable for failing to respond to a single instance of sexual assault.  Rather, Defendant argues, Defendant's deliberate indifference must have caused Plaintiffs to have been subjected to additional harassment.  Addressing one aspect of a Title IX claim, The *Davis* court stated the following:

> If a funding recipient does not engage in harassment directly, it <u>may</u> not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment.  That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it.

*Davis*, 526 U.S. at 644-45. (emphasis added).  This language far from establishes a necessary condition for liability to attach, as suggested by Defendant.  Rather, the Court in *Davis* merely articulated a circumstance in which an educational institution <u>may</u> not be liable.

Even if this court chooses to treat this language in *Davis* as a prerequisite for a finding of Title IX liability, Plaintiffs' allegations satisfy this condition.  As discussed prior, an institution can be deliberately indifferent for actions or inactions predating a victim's report of sexual violence.  Here, Plaintiffs argue that the University was deliberately indifferent to the issue of sexual violence prior to their respective sexual assaults.  Thus, even if the standard is as Defendant characterizes it, that is, an institution's deliberate indifference must cause a victim to actually experience sexual violence, Plaintiff's allegations support such a finding.

However, the standard outlined in *Davis* is satisfied not only when an educational institution causes a victim to undergo actual harassment, but also when an institution's deliberate indifference makes a victim "liable or vulnerable" to harassment.  The *Davis* court goes on to actually define what "subject[s]" means within this context:

> Random House Dictionary of the English Language 1415 (1966) (defining "subject" as "to cause to undergo the action of something specified; expose" or "to make liable or

---

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

vulnerable; lay open; expose"); Webster's Third New International Dictionary 2275 (1961) (defining "subject" as "to cause to undergo or submit to: make submit to a particular action or effect: EXPOSE").

*Id.* at 645. Thus, unlike Defendant's assertion that to "subject" means that a student must actually experience additional harassment, the Court in *Davis* clearly acknowledged that this condition is satisfied when a victim is "vulnerable," "exposed" or "la[id] open" to additional harassment.[4]

Courts have continuously interpreted the vulnerability to additional harassment as sufficient to satisfy the standard articulated in *Davis*. In *Williams v. Bd. of Regents*, the plaintiff was raped by multiple members of the University of Georgia's basketball team on January 14, 2002. 477 F.3d at 1288. The very next day, the plaintiff withdrew from school and reported her assault to the local police department, who subsequently reported it to the defendant. *Id.* at 1289. In discussing the deliberate indifference prong of their Title IX analysis, the court held that the defendant acted with deliberate indifference for two independent reasons, either of which was sufficient for liability to attach, namely (1) the defendant knew of one of the perpetrators prior history of sexually assaulting women and failed to take measures to protect its students, including the plaintiff from him, and (2) because the defendant failed to adequately respond to plaintiff's report that she had been sexually assaulted. *Id.* at 1297. In so finding, the court specifically addressed the requirement that these two separate "instances" of deliberate indifference must have "subjected" plaintiff to additional harassment. *Id.* at 1295-97. Relevant here, is the court's finding that the defendant's deliberate indifference in the way that they handled the plaintiff's report subjected her to additional harassment, even though she was no longer enrolled at the school. Specifically, the court stated:

> Once again, UGA's deliberate indifference was followed by further discrimination, this time in the form of effectively denying Williams an opportunity to continue to attend UGA. Although Williams withdrew from UGA the day after the January 14 incident, we do not believe that at this stage her withdrawal should foreclose her argument that UGA continued to subject her to discrimination. In light of the harrowing ordeal that Williams

---

[4] Defendant's citation to *Stanley v. Trustees of California State U.*, 433 F.3d 1129 (9th Cir. 2006) on this point is equally inapplicable. In *Stanley*, the court found that the plaintiff had not alleged that she was subjected to additional harassment while she was not on campus during the relevant time period, and the possibility of a hostile environment, should the plaintiff have returned to campus, was not an "act" within the meaning of the continuing violations doctrine, and thus, the plaintiff's claim was not timely under the relevant statute of limitations. *Id.* at 1137.

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

faced on January 14, her decision to withdraw from UGA was reasonable and expected. Viewing the evidence in the light most favorable to Williams, UGA failed to take any precautions that would prevent future attacks from Cole, Thomas, Brandon Williams, or like-minded hooligans should Williams have decided to return to UGA, either by, for example, removing from student housing or suspending the alleged assailants, or implementing a more protective sexual harassment policy to deal with future incidents. Considering what had already occurred, UGA's failure was inexplicable and discriminatory.

*Id.*, at 1297.  *See also Doe ex rel. Doe v. Coventry Bd. of Educ.*, 630 F. Supp. 2d 226, 233 (D. Conn. 2009) ("The evidence shows that Jesse was permitted to continue attending school with Mary Doe for three years after the assault, leaving constant potential for interactions between the two. Although the Defendant argues otherwise, a reasonable jury could conclude that Jesse's mere presence at the high school 'was harassing because it exposed [Mary Doe] to the possibility of an encounter with him.'"); *Kelly v. Yale U.*, 2003 WL 1563424, at *4 (D. Conn. Mar. 26, 2003) ("a reasonable jury could find that Yale's response, or lack thereof, rendered Kelly "liable or vulnerable" to Nolan's harassment, and that Yale's failure to provide Kelly with accommodations, either academic or residential, immediately following Nolan's assault of her, was clearly unreasonable given all the circumstances of which it was aware."); *S.S. v. Alexander*, 177 P.3d 724, 741 (Wash. App. Div. 1 2008) ("S.S. did not have to be raped twice before the university was required to appropriately respond to her requests for remediation and assistance. In the Title IX context, there is no 'one free rape' rule.")

Other courts, though not directly addressing the argument that deliberate indifference must subject a victim to additional harassment, have nonetheless recognized that Title IX liability can follow from a single incident of assault.  *See Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) ("…one incident can satisfy a claim…"); *Brown v. Hot, Sexy & Safer Productions*, 68 F.3d 525, 541 n. 13 (1st Cir.1995) ("[w]e do not hold that a one-time episode is not *per se* incapable of sustaining a hostile environment claim"); *Doe v. School Admin. Dist. No. 19*, 66 F.Supp.2d 57, 62 (D.Me.1999) ("Within the context of Title IX, a student's claim of hostile environment can arise from a single incident."); *Lopez v. Metropolitan Government of Nashville and Davidson County,* 646 F.Supp. 891, 913 (M.D.Tenn.2009) ("even a single incident of rape is sufficient to establish that a child was subjected to severe, pervasive, and objectively offensive sexual harassment for purposes of Title IX"); *Roe ex rel. Callahan v.*

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

*Gustine Unified School Dist.*, 678 F. Supp. 2d 1008, 1027 (E.D. Cal. 2009) ("several courts have held that a single instance of assault is sufficient to state a Title IX claim"); *See also Doe ex rel. Doe v. Derby Bd. of Educ.,* 451 F. Supp. 2d at 442 (denying motion for summary judgment on a Title IX claim arising out of a single incident of sexual assault).

These outcomes make sense in light of Title IX's purpose to ensure a learning environment free from discrimination. An analysis of the policy implications of Defendant's interpretation that a victim must actually experience additional harassment yields an irrational and dangerous result, antithetical to the purpose of Title IX. Suppose, hypothetically, that a perpetrator rapes Victim A. Perpetrator and Victim A are students at the same school, and Victim A reports the rape to the appropriate administrator the very next day. The school, in response to Victim A's report, does nothing. Then, suppose this very same perpetrator rapes a different student at the school, Victim B, then Victim C, Victim D and so on and so forth. Under Defendant's interpretation, the school would not be subject to Title IX liability for its deliberate indifference to Victim A's report, even though Victim A is subjected to the fear, anxiety, apprehension and all the other emotions that inevitably flow from the fact that she could encounter the perpetrator at any time, and in fact be raped again by the perpetrator, who is allowed to remain, unrestricted, on campus and is continuing to assault other victims on campus. Surely, neither Congress nor the *Davis* Court intended for educational institutions to escape Title IX liability when their actions or inactions allow perpetrators to have one free bite of every apple on campus.

Defendant's reliance on *Yoon Ha v. Northwestern Univ.*, 2014 WL 5893292 (N.D. Ill. Nov. 13, 2014) to support this argument is not persuasive. Contrary to Defendant's recitation of the holding in *Yoon Ha*, the court in that case dismissed the plaintiff's Title IX claims not because the plaintiff was never subjected to further harassment following her report, but rather, because the defendant took immediate and reasonable steps to respond to plaintiff's complaint. *Id.* at *2. In actually addressing the instant issue, and in complete contradiction to Defendant's argument, the *Yoon Ha* court specifically acknowledged that, "If Northwestern had learned that its response was proven to be inadequate to prevent further harassment by Ludlow, it would have

been required to take further steps to avoid liability." *Id.*

Here, the fact that Karasek's and Commins' assailants were allowed to remain on campus, unrestricted, and Butler's assailant was allowed to come to campus at will, and without restriction, supports a finding that Plaintiffs were "subjected" to additional harassment as a result of Defendant's deliberate indifference to their report. Further, with regard to Butler, the University had actual knowledge of her first assault, by virtue of their agency relationship with Higgins. Despite actual knowledge that Butler had been sexually assaulted, neither the University, nor their agent did anything in response. This deliberate indifference caused Butler to then be assaulted two more times.

Viewed in the light most favorable to Plaintiffs, a reasonable jury could find that Defendant's antecedent deliberate indifference to sexual violence on campus caused Plaintiffs to undergo sexual violence, or in the alternative, Defendant's deliberate indifference to Plaintiffs' reports of sexual violence caused Plaintiffs to be vulnerable to additional harassment. For these reasons, Defendant's motion should be denied.

## VI.   PLAINTIFFS' EDUCATION CODE § 220 CLAIMS ARE PROPER

Plaintiffs agree with Defendant on the point that the legal standards governing Title IX apply equally to claims brought under Cal. Educ. Code § 220. *See Donovan v. Poway Unified Sch. Dist.,* 167 Cal.App.4th 567 (2008). Thus, for all the same reasons that Plaintiffs' Title IX claims are proper, as cited above, Plaintiffs' claims under Cal. Educ. Code § 220 are similarly proper.

Defendant next argues that Cal. Educ. Code § 220 does not apply to the Regents. However, one type of educational institution defined in Cal. Educ. Code § 210.3 is a public institution. Thus, Defendant does fall within this definition. However, even if Defendant is correct on this point, Cal. Educ. Code § 66270 parallels Cal. Educ. Code § 220 and unambiguously applies to Defendant. That section states:

> No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any characteristic listed or defined in Section 11135 of the Government Code or any other characteristic that is contained in the prohibition of hate crimes set forth in subdivision (a) of Section 422.6 of the Penal Code in any program or activity conducted by any postsecondary educational institution that receives, or benefits from, state

financial assistance or enrolls students who receive state student financial aid.

Cal. Educ. Code § 66270.  Thus, should the Court accept Defendant's argument that Cal. Educ. Code § 220 does not apply to Defendant, Plaintiffs request leave to amend their complaint to allege a violation of Cal. Educ. Code § 66270.[5]

## VII.   DEFENDANT IS VICARIOUSLY LIABLE FOR THE FAILURE OF ITS EMPLOYEES TO ADEQUATELY WARN, TRAIN OR EDUCATE PLAINTIFFS ABOUT THE RISK OF SEXUAL ASSAULT

Plaintiffs allege that the University failed to warn, train or educate them about the risks of sexual assault.  Defendant seeks to dismiss this claim, arguing that it is immune from common law tort liability, and that it owed no duty to warn, train, or educate its students about the risks of sexual assault on campus.  Defendant is wrong.

Recently the Supreme Court of California explained the statutory framework for liability against a public entity, as follows:

> Section 815 establishes that public entity tort liability is exclusively statutory: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Section 815.2, in turn, provides the statutory basis for liability relied on here: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Finally, section 820 delineates the liability of public employees themselves: "(a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person. [¶] (b) The liability of a public employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person." In other words, "the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person (§ 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§ 815, subd. (b))."

*C.A. v. William S. Hart Union High Sch. Dist.,* 53 Cal.4th 861, 868 (2012).  The court recognized that a public entity may therefore be vicariously liable for the negligence of its

---

[5] Leave to amend will not prejudice Defendant.  Much like Cal. Educ. Code § 220, the requirements for liability based on a violation of Cal. Educ. Code § 66270 have been interpreted to exactly parallel Title IX.  *See Videckis v. Pepperdine U.,* 2015 WL 1735191, at *2 (C.D. Cal. Apr. 16, 2015)

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

1  employees.  *Id.* at 869.  Thus, if any University employee owed a duty to warn, train or educate

2  Plaintiffs about the risks of sexual assault, a failure to carry out that duty will subject Defendant

3  to liability based on a theory of vicarious liability under Government Code § 815.2.  Defendant

4  employed individuals for just this purpose.

5  Title IX requires that a school have a policy that effectively apprises students of "what

6  kind of conduct constitutes sexual harassment, including sexual violence, or that such conduct is

7  prohibited discrimination."  (DCL at p. 7.)  The DCL also "recommends that schools implement

8  preventive education programs . . . [t]hese programs should include a discussion of what

9  constitutes sexual harassment and sexual violence, the school's policies and disciplinary

10  procedures, and the consequences of violating these policies," among other things.  (DCL at 14-

11  15.)  In carrying out these responsibilities, schools are required to designate a Title IX

12  coordinator, which Defendant did.  (DCL at 7.)  By tasking an employee with the obligation of

13  carrying out Title IX's mandate to educate students about sexual harassment and sexual

14  violence, the University endowed that employee with a duty to warn, train or educate, which

15  Plaintiffs have alleged was breached.  Plaintiffs have also alleged evidence of Defendant's

16  breach.  Specifically, Plaintiffs allege that a California state audit of four universities, including

17  the University, concluded, among other conclusions, that: the universities must do more to

18  properly educate students on sexual harassment and sexual violence, and the universities did not

19  always comply with requirements in state law for distribution of relevant policies.  (Compl., ¶

20  72.)  Defendant is vicariously liable for that negligence.

21  If this Court finds that the current state of the pleadings is insufficient to establish

22  this duty, Plaintiffs respectfully request leave to file an amended complaint alleging the

23  following facts: 1) Defendant maintained, and continues to maintain, at least three

24  administrative offices that generally handle issues surrounding campus sexual assault; 2) the

25  Title IX office employs a Title IX coordinator; 3) Defendant also maintains an Office of Student

26  Conduct and the Gender Equity Resource Center, both of which are headed by individual

27  administrators; 4) through these Departments and administrators, Defendant undertook to

28  educate its students about sexual harassment and sexual violence through mandatory and

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA**

optional educational events; 5) among these three offices, at least one administrator, and probably more, was responsible for creating and implementing Defendant's educational programs regarding campus sexual assault; and 6) the educational programs were negligently designed and implemented by the responsible administrator(s) and were ineffective for their intended purpose.

Defendant claims it owed no duty to protect its students from criminal conduct. But Plaintiffs' theory is not based on a duty to protect, or any obligation to control the conduct of any third party. Instead, this cause of action derives from *Juarez v. Boy Scouts of Am.*, 81 Cal.App.4th 377 (2000). In *Juarez*, a scout was repeatedly sexually molested by his troop leader. *Id.* at 385. In recognition of the imminently foreseeable risk that scouts would be molested, Boy Scouts of America implemented a program designed to educate and train the scouts to avoid or respond to molestation. *Id.* at 398-400. Juarez never received the training. *Id.* at 399. Presumably because this theory was "[d]istinct from theories based on the Scouts' alleged negligence in selecting, supervising, and retaining" the molester, the Juarez court did not rely on the special relationship doctrine advocated by the University. Instead, the court employed the policy-driven, factor-based, analysis from *Rowland v. Christian*, 69 Cal.2d 108 (1968), and determined that the Boy Scouts owed a duty to warn, train or educate their scouts, even if there had not been a special relationship. *Id.* at 409.

The same analysis strongly supports the imposition of a duty here. That college students may be sexually assaulted is absolutely foreseeable; there is no doubt that the Plaintiff's suffered harm as a result of the assaults; the policy of preventing future assaults strongly favors the imposition of this duty; and there is no discernable burden on the University, which would merely have to strengthen and competently implement the policies it already has in place. This Court should deny the motion to dismiss, or allow Plaintiffs leave to amend to include additional facts regarding the duties of the University employees to warn, train or educate its students.

/ / /

**VIII.   DEFENDANT IS NOT IMMUNE FROM LIABILITY ARISING OUT OF**

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

**PLAINTIFFS' FRAUD CAUSE OF ACTION**

Defendant asserts Plaintiffs' fraud claim is barred because, pursuant to Cal. Gov. Code § 818.1 (sic), a "public entity is not liable for an injury caused by misrepresentation by an employee … whether … negligent or intentional."  In support, Defendant cites several cases involving low level employees, acting on their own, who engaged in fraudulent conduct.  In *Jappa v. Cal.*, 2009 WL 69312 (S.D. Cal. Jan. 8, 2009), two department of corrections employees' misrepresentations about the plaintiff's employment agreement and anticipated payments.  *Harshbarger v. City of Colton*, 197 Cal.App.3d 1335 (1988), concerns two building inspectors knowingly disregarding code violations.  Cases considering § 818.8, contemplate the acts of either one or a few low level employees acting on their own.  *See Tokeshi v. Cal.,* 217 Cal.App.3d 999, 1005 (1990); *Brown v. Compton Unified Sch. Dist.*, 68 Cal.App.4th 114, 116 (1998).

There is no blanket immunity for public entities from fraud as Defendant asserts.  The policy underlying the Tort Claims Act is that liability is the rule, immunity is the exception. *Baldwin v. State of Cal.*, 6 Cal.3d 424, 435 (1972).  The scope of immunity under § 818.8 is limited for "misrepresentations."  *Michael J. v. Los Angeles County Dept. of Adoptions,* 201 Cal.App.3d 859, 868 (1988).  "Misrepresentation" is employed in a narrow, rather than expansive sense. *Johnson v. State,* 69 Cal.2d 782, 800 (1968).  The Legislature designed § 818.8 to exempt governmental entities from interference with financial or commercial interests, but not for other forms of harm caused by a public entities omissions or misrepresentations. *Michael J. v. Los Angeles County Dept. of Adoptions, supra,* 201 Cal.App.3d at 868 citing *Johnson v. State, supra,* 69 Cal.2d at 800. (Holding the County of Los Angeles liable for fraudulent omission to disclose an adoptive child's neurological disorder).  Here Plaintiffs allege that the institution itself, through its policy makers and enforcers has engaged in the fraudulent conduct.  Its managing agents, officers and administrators were carrying out this institutional fraud by misleading students about the safety conditions on campus, deliberately underreporting sexual assaults.  Public policy dictates that a public university should not blatantly and purposefully lie and misreport information.  This case does not concern the

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

independent conduct of low level employees unbeknownst to the University. Further the misrepresentations alleged do not concern interference in financial or commercial interests. This case concerns Defendant's underreporting of sexual assaults and other misrepresentations regarding campus safety, resulting in the violent sexual assaults of Plaintiffs.

Defendant's assertion that Plaintiffs have failed to "state with particularity the circumstances constituting fraud" as required by Fed. R. Civ. Proc. 9 (b) is without merit. Rule 9 (b) must be read in harmony with Rule 8's requirement of a "short and plain" statement of the claim. *Sanderson v. HCA-The Healthcare Co.,* 447 F.3d 873, 876 (6th Cir. 2006). The pleading must identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989). Further, providing those who perpetrated the fraud is not required where it is unrealistic to expect plaintiff to know. *Odom v. Microsoft Corp.,* 486 F.3d 541, 554-555 (9th Cir. 2007). And, "less specificity is required when it appears from the nature of the allegations, that the defendant must necessarily possess full information concerning the facts of the controversy." *Comm. on Children's Television, Inc. v. Gen. Food Corp.*, 35 Cal.3d 197, 217 (1983).

Plaintiffs have asserted fraud with appropriate particularity, claiming Defendant "made statements and omissions that communicated to Plaintiffs that the University was safe and that students only experienced a minimal amount of sexual violence." (Compl., ¶ 82.) Plaintiffs specifically reference "sexual violence" as the focus of the misrepresentation. Also, Plaintiffs assert Defendant, "underreported the amount of sexually violent incidents that were reported in violation of the Clery Act." (*Id.* ¶ 83.) Plaintiffs cite not only the acts constituting the fraud, but the reporting statute. Prior to the completion of discovery, it is not possible for Plaintiffs to know all the details of the conduct. Rather, those facts undoubtedly "lie more in the knowledge of the opposing party," beckoning the lowered pleading requirement outlined in *Comm. on Children's Television, Inc.*

Similarly, Plaintiffs have not asserted "violation of the Clery Act" as a separate cause of action. The gravamen of Plaintiffs' claim is the underreporting of sexually violent incidents, not Defendant's Clery Act compliance; its inclusion in the Complaint merely provides further

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

specification as to the nature of the fraudulent acts.  The Clery Act is not an immunity statute and the subsections cited by Defendant primarily concern evidentiary admissibility.  Plaintiffs have set forth allegations and are not admitting evidence.

## IX.    CONCLUSION

Plaintiffs' allegations create questions of fact relating to Defendant's deliberate indifference in response to Plaintiffs' reports of sexual assault.  Further, Plaintiff has properly alleged, and Defendant can be held liable, for negligently failing to warn, train and/or educate Plaintiffs regarding sexual violence.  Finally, Defendant is not immune from fraud liability, and Plaintiffs' allegations are sufficiently specific to allege a fraud cause of action.  When viewed with the requisite liberality afforded to plaintiffs in civil rights cases, coupled with the policies and purposes of Title IX, Plaintiffs must be allowed to proceed with their claims.  For these reasons, Defendant's motion must be denied.

Dated: October 8, 2015                        THE ZALKIN LAW FIRM, P.C.
                                              IRWIN M. ZALKIN
                                              DEVIN M. STOREY
                                              ALEXANDER S. ZALKIN
                                              RYAN M. COHEN

                                      By:     /s/ Alexander S. Zalkin
                                              Alexander S. Zalkin
                                              Attorneys for Plaintiffs

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA**